*Receipt # 2300*
*Summonses Iss.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

*1532*

|  |  |
|---|---|
| RONALD L. HUBER, WILLIAM J. AIRGOOD, ANTHONY DEFABBO, JOHN DINIO, and ERNEST GISHNOCK, individually and on behalf of those similarly situated, | : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : <br> : |
| v. | : <br> : <br> : <br> : |
| ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, II P.C.; CLETUS P. ERNSTER III; GEORGE E. CIRE, Jr.; TAYLOR & CIRE; TAYLOR & ERNSTER P.C.; ROBERT A. PRITCHARD; CHRISTOPHER FITZGERALD; LAW OFFICES OF ROBERT A. PRITCHARD; PRITCHARD LAW FIRM, PLLC; JOSEPH B. COX, Jr.; JOSEPH B. COX, Jr. P.C. and COX AND COX, L.L.P., | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

CIVIL ACTION NO. **02-0304**

**COMPLAINT —
CLASS ACTION**

Plaintiffs, Ronald L. Huber, William J. Airgood, Anthony Defabbo, John Dinio and Ernest Gishnock, by their attorneys, Mager & White, P.C. and Kronish Lieb Weiner and Hellman LLP, for their complaint allege as follows:

1.      This is a class action against a group of lawyers and law firms for breach of fiduciary duty, fraud, conversion, violation of the deceptive trade practices and consumer protection act of Pennsylvania, professional malpractice, an accounting and injunctive relief.

2.     The class consists of approximately 2,645 persons who reside or had substantial exposure to asbestos in Pennsylvania, Ohio or Indiana and have been and are represented by the defendants with respect to asbestos personal injury claims.

3.     The lawyers and law firms in this case defrauded a group of hard-working union members in blue-collar trades. They are victims of asbestos exposure. To a large extent, they are unsophisticated and have little experience with or knowledge of the legal system. The lawyers and law firms recruited the victims for inclusion as plaintiffs in "mass actions" and then betrayed them. They viewed their clients as mere inventory that could generate enormous legal fees with relatively little effort. They told their clients nothing about the lawsuits in which they were included. They told them nothing about the thousands of other clients whom they were simultaneously representing. They told them nothing about the colossal, aggregate settlement agreements which they executed (supposedly on the clients' behalf), agreements that sacrificed the clients' rights and interests to the lawyers' greed. The victims received a few *thousand* dollars for their injuries while the lawyers amassed tens of *millions* of dollars in fees. Instead of serving the clients' interests, these lawyers viewed their clients as serving them.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy with respect to each class member exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over the defendants because they, acting directly or through agents, do business in the state of Pennsylvania, committed torts in the state of Pennsylvania, caused harm and tortious injury in the state of Pennsylvania by acts and omissions outside the state, and transacted in this state business from which the claims arise.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to this action occurred in this district.

## THE PARTIES

7.     Plaintiff Ronald L. Huber ("Huber") is a resident of Pittsburgh, Pennsylvania. Huber is 60 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Huber has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Huber's attorneys with respect to Huber's asbestos personal injury claims.

8.     Plaintiff William J. Airgood ("Airgood") is a resident of North Huntingdon, Pennsylvania. Airgood is 54 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Airgood has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Airgood's attorneys with respect to Airgood's asbestos personal injury claims.

9.      Plaintiff Anthony DeFabbo ("DeFabbo") is a resident of Uniontown, Pennsylvania. Defabbo is 52 years old. He has worked for approximately 31 years in Pennsylvania in a steel mill, and before that in Ohio, at a factory that manufactured disc brakes. In both jobs, he has had substantial and continuous exposure to asbestos-containing products. DeFabbo has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as DeFabbo's attorneys with respect to DeFabbo's asbestos personal injury claims.

10.     Plaintiff John Dinio ("Dinio") is a resident of Monessen, Pennsylvania. Dinio is 55 years old. He has worked for approximately 35 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Dinio has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Dinio's attorneys with respect to Dinio's asbestos personal injury claims.

11.     Plaintiff Ernest Gishnock ("Gishnock") is a resident of Donora, Pennsylvania. Gishnock is 49 years old. He has worked for approximately 28 years in a steel mill in Pennsylvania, where he has had substantial and continuous exposure to asbestos-containing products. Gishnock has been diagnosed with an asbestos-related disease. The defendants have acted and continue to act as Gishnock's attorneys with respect to Gishnock's asbestos personal injury claims.

12.     Defendant Robert G. Taylor, II ("Taylor") is a resident of the state of Texas. Taylor is a lawyer admitted to practice in the state of Texas.

13.     Defendant Robert G. Taylor, II P.C. ("Taylor P.C.") is a professional corporation providing legal services. Upon information and belief, Taylor

P.C. is organized under the laws of the state of Texas, with its principal place of business located in Houston, Texas. Upon information and belief, defendant Taylor is the president and sole shareholder of defendant Taylor P.C.

14.     Defendant Cletus P. Ernster III ("Ernster") is a resident of the state of Texas. Ernster is a lawyer admitted to practice in the state of Texas.

15.     Defendant George E. Cire, Jr. ("Cire") is a resident of the state of Texas. Cire is a lawyer admitted to practice in the state of Texas.

16.     Defendant Taylor & Cire was a law partnership formed under the laws of the state of Texas, with its principal place of business in Houston, Texas. The former members of Taylor & Cire reside in the state of Texas.

17.     Defendant Taylor & Ernster P.C. ("Taylor & Ernster") is a professional corporation providing legal services, and, upon information and belief, is the successor to defendant Taylor & Cire. Upon information and belief, Taylor & Ernster P.C. is organized under the laws of the state of Texas, with its principal place of business located in Houston, Texas.

18.     Defendant Taylor P.C. is a member of Taylor & Ernster and was a member of Taylore & Cire.

19.     Defendant Ernster is a member of Taylor & Ernster and was a member of Taylor & Cire.

20.     Defendant Cire was a member of Taylor & Cire.

21.     Defendants Taylor, Taylor P.C., Cire, Ernster, Taylor & Cire and Taylor & Ernster are collectively referred to as the "Taylor Group."

22.     Defendant Robert A. Pritchard ("Pritchard") is a resident of the state of Mississippi. Pritchard is a lawyer admitted to practice in the state of Mississippi.

23.     Defendant Christopher Fitzgerald ("Fitzgerald") is a resident of the state of Mississippi. Fitzgerald is a lawyer admitted to practice in the state of Mississippi.

24.     Defendant Law Offices of Robert A. Pritchard ("Pritchard Law Offices") was a law partnership organized under the laws of the state of Mississippi, with its principal place of business in Pascagoula, Mississippi. Defendants Pritchard and Fitzgerald were members of Pritchard Law Offices.

25.     Defendant Pritchard Law Firm, PLLC (the "Pritchard Firm") is a professional corporation providing legal services, and, upon information and belief, is the successor to Pritchard Law Offices. The Pritchard Firm is organized under the laws of the state of Mississippi, with its principal place of business in Pascagoula, Mississippi. Defendants Pritchard and Fitzgerald are members of the Pritchard Firm.

26.     Defendants Pritchard, Fitzgerald, Pritchard Law Offices and the Pritchard Firm are collectively referred to as the "Pritchard Group."

27.     Defendant Joseph B. Cox, Jr. ("Cox") is a resident of the state of North Carolina. Cox is a lawyer admitted to practice in the state of North Carolina.

28.     Defendant Joseph B. Cox, Jr. P.C. ("Cox P.C.") is a professional corporation providing legal services. Upon information and belief, Cox P.C. is organized under the laws of the state of North Carolina, with its principal place of business located in Raleigh, North Carolina. Upon information and belief, defendant Cox is the president and sole shareholder of defendant Cox P.C.

29.     Defendant Cox and Cox, L.L.P. ("Cox and Cox") is a limited liability partnership organized under the laws of North Carolina and engaged in the practice of law. Upon information and belief, defendant Cox is a partner of defendant Cox and Cox.

30.     Defendants Cox, Cox P.C. and Cox and Cox are collectively referred to as the "Cox Group."

31.     Upon information and belief, defendant Taylor P.C. is undercapitalized and disregards corporate formalities.

32.     Upon information and belief, the corporate assets of defendant Taylor P.C. are used for defendant Taylor's personal interests, and the corporate affairs of defendant Taylor P.C. are intermingled with the personal affairs of defendant Taylor.

33.     The corporate structure of defendant Taylor P.C. should be ignored in order to prevent fraud and injustice.

34.     By reason of the foregoing, all liabilities of defendant Taylor P.C. are also liabilities of defendant Taylor and vice versa.

35.     Upon information and belief, defendant Taylor & Ernster is undercapitalized and disregards corporate formalities

36.     Upon information and belief, the corporate assets of defendant Taylor & Ernster are used for the personal interests of defendants Taylor and Ernster, and the corporate affairs of defendant Taylor & Ernster are intermingled with the personal affairs of defendants Taylor and Ernster.

37.     The corporate structure of defendant Taylor & Ernster should be ignored in order to prevent fraud and injustice.

7

38.    By reason of the foregoing, all liabilities of defendant Taylor & Ernster are joint and several liabilities of defendants Taylor and Ernster, and the liabilities of each of defendants Taylor and Ernster are liabilities of defendant Taylor & Ernster.

39.    Upon information and belief, defendant Pritchard Law Firm is undercapitalized and disregards corporate formalities

40.    Upon information and belief, the corporate assets of defendant Pritchard Law Firm are used for the personal interests of defendants Pritchard and Fitzgerald, and the corporate affairs of defendant Pritchard Law Firm are intermingled with the personal affairs of defendants Pritchard and Taylor.

41.    The corporate structure of defendant Pritchard Law Firm should be ignored in order to prevent fraud and injustice.

42.    By reason of the foregoing, all liabilities of defendant Pritchard Law Firm are joint and several liabilities of defendants Pritchard and Fitzgerald, and the liabilities of each of defendants Pritchard and Fitzgerald are liabilities of defendant Pritchard Law Firm.

43.    Upon information and belief, defendant Cox P.C. is undercapitalized and disregards corporate formalities.

44.    Upon information and belief, the corporate assets of defendant Cox P.C. are used for defendant Cox's personal interests, and the corporate affairs of defendant Cox P.C. are intermingled with the personal affairs of defendant Cox.

45.    The corporate structure of defendant Cox P.C. should be ignored in order to prevent fraud and injustice.

46. By reason of the foregoing, all liabilities of defendant Cox P.C. are also liabilities of defendant Cox and vice versa.

47. In connection with the matters alleged in this complaint each defendant acted for the benefit or on behalf of, and as agent of, the other defendants.

48. In connection with the matters alleged in this complaint, one or more of the various defendants had contacts with this jurisdiction for the benefit of the defendants, and the defendants were or should have been aware of those contacts. These contacts were intended to and did further the interests of all the defendants.

## INTRODUCTION

49. This case arises from corruption within the asbestos personal injury bar.

**Historical Background**

50. For hundreds of years, asbestos has been mined and then refined to produce materials that are unusually resistant to heat. The heat resistant properties of asbestos have made it ideal for use in factories, refineries, homes, office buildings, ships, automobiles and every other place or device where insulation or fire-proofing is of concern.

51. Until the early 1970s, hundreds of companies in the United States ("Asbestos Corporations") either mined, manufactured, distributed or used asbestos or products that contained asbestos.

52. Although the potentially harmful effects of breathing asbestos had been observed for several decades in workers, like miners or millers, involved with the

handling of the material in its raw form, it was not until the mid-1960s that the United States medical community began to disseminate studies indicating that people exposed to end-products that contained asbestos were also at risk of contracting various pulmonary diseases.

53. Dust inhaled when asbestos containing products are being installed or removed was shown to cause a host of pulmonary problems, ranging from mild scarring of the lung, to severe impairment of lung capacity, to lethal forms of cancer.

54. In response to the information from the medical community, the manufacture, distribution and use of any asbestos products that could produce dust largely ceased in the United States by the early 1970s.

55. Also in the 1970s, people who had contracted diseases from exposure to asbestos products began to file personal injury claims against the Asbestos Corporations.

56. As jury awards against and settlements with Asbestos Corporations grew, the number of claims filed also increased. By the early 1980s, the prosecution of asbestos personal injury claims had evolved into an industry, and the lawyers who were prominent in that industry had accumulated vast wealth.

57. The promise of such wealth drew additional plaintiffs' lawyers into the field, and this resulted in more and more aggressive efforts to recruit asbestos personal injury plaintiffs.

58. Although manufacture and use of the dangerous forms of asbestos had largely ceased by the early 1970s, the long latency period of asbestos related diseases and the fact that such diseases could be contracted from handling or removing asbestos

products years after they had been installed meant that victims might appear decades, even many decades, after the 1970s.

59.     As a result of the extensive use of asbestos in the past, the exposures that have occurred long after use of asbestos ceased, and the length of the latency period, the number of personal injury victims is enormous, and tens of thousands of asbestos personal injury claims are filed in the nation's courts every year.

60.     When those claims reach trial, juries typically award substantial sums for compensatory damages, and often award astronomical sums as punitive damages.

61.     Hobbled by the magnitude of the filings and their past experiences in the tort system, the Asbestos Corporations are eager to avoid trials and to settle claims in bulk, at a discount.

**A Summary of this Action**

62.     The plaintiffs in this action are steelworkers.  Collectively, they have more than 160 years experience working in steel mills.  They have limited means. They are not sophisticated.  They have all been diagnosed with asbestos-related diseases.

63.     The lawyers and law firms who are the defendants in this action were responsible for filing and settling the asbestos personal injury claims of the plaintiffs.  These lawyers and law firms completely perverted the legal system.  They concerned themselves principally with the recruitment of huge numbers of victims, and they enlisted agents -- often other lawyers or law firms -- to assist in the recruitment campaign.  The lawyers and law firms involved in this case did not act as true representatives of their clients.  Instead, they regarded the asbestos victims not as clients,

but as "inventory," to be traded in bulk, without any regard to individual rights or

circumstances. They were concerned primarily with accumulating the largest fees with

the least effort. In the end, the clients simply served the interests of the lawyers instead

of the other way around.

64.    The unscrupulous lawyers and law firms in this case commenced

"mass actions" in the names of their thousands of clients, including the plaintiffs in this

case, without informing them about the nature and scope of the actions in which they had

been joined. The lawyers ultimately entered into huge aggregate settlements of their

clients' claims -- all without the knowledge or approval of their clients. None of the

aggregate settlements has ever been disclosed to the plaintiffs by the lawyers who are the

defendants in this action. None of the aggregate settlements was or ever has been

reviewed or approved by a court.

65.    The lawyers and law firms exercised complete, unsupervised

discretion with regard to the settlement funds, including the amount and timing of the

disbursement of the funds to their clients and the determination of how much the lawyers

would retain (in addition to their attorneys' fees) as "expenses."

66.    In some instances, the defendant lawyers distributed less of the

settlement fund to one group of clients solely because of the location of the clients'

residence and the place where they were exposed to asbestos. The plaintiffs in this case

and the members of the proposed class suffered this discriminatory treatment.

67.    The plaintiffs in this case and the members of the proposed class

never knew what actions they had been joined in and were never provided with basic

information about those actions. They never saw the aggregate settlement agreements

and never knew the amount of the aggregate settlements. They did not know that their lawyers were simultaneously representing thousands of similarly situated clients with competing claims to the settlement funds. They did not know what the other similarly situated clients were receiving in settlement, so they did not know that they were receiving less. They never received detailed expense reports from the lawyers and never knew what the true expenses incurred by their lawyers actually were. They would receive nothing more than a letter indicating an amount that had been paid in settlement by particular Asbestos Corporation and the amounts deducted as attorneys' fees and expenses. In order to obtain the settlement funds that belonged to them, they were compelled to sign documents in which the defendant lawyers attempted, after the fact, to conceal their own misconduct. They never knew how much they might have been awarded had their lawyers prosecuted their claims to trial instead of selling them off in bulk. They were never given an opportunity to have their claims fully and fairly litigated or to participate in the settlement of their claims.


## FACTUAL BACKGROUND

68.    Plaintiffs have been diagnosed with diseases caused by exposure to asbestos or products containing asbestos.

69.    Commencing in 1995 and continuing to date, the defendants have acted as the attorneys for Plaintiffs in litigation seeking damages from hundreds of Asbestos Corporations for personal injuries arising from exposure to asbestos or asbestos-containing products manufactured or distributed by those corporations.

70.   In 1995, the Pritchard Group filed an action in a state court in Mississippi asserting asbestos personal injury claims on behalf of several of their clients (the "Mississippi Action"). The Taylor Group assisted the Pritchard Group in recruiting clients to the Mississippi Action and acted as co-counsel to the Pritchard Group in the Mississippi Action.

71.   Between 1995 and 1999, the Taylor and Pritchard Groups recruited asbestos clients from numerous parts in the United States for inclusion in the Mississippi Action.

72.   As part of the recruitment effort, the Taylor and Pritchard Groups enlisted law firms and lawyers in, among other places, Pennsylvania, Ohio and Indiana, to act as their agents in attracting additional clients for inclusion in the Mississippi Action.

73.   As part of the recruitment effort, the Taylor and Pritchard Groups and their agents sponsored union-wide lung screenings and pulmonary function tests.

74.   The results of the lung screenings and pulmonary function tests were sent to the Taylor and Pritchard Groups. Union members whose lung screening or pulmonary function test showed signs or symptoms of exposure to asbestos, were, often without the members' knowledge or approval, included in the Mississippi Action.

75.   By 1999, the Taylor Group and the Pritchard Group, working directly and through their agents, had joined nearly 5,000 victims in the original Mississippi Action and a second Mississippi action that they subsequently commenced (the two actions in Mississippi are collectively referred to as the "Mississippi Actions").

76.     The plaintiffs in the instant case were included by the Taylor and Pritchard Groups among the 5,000 clients who were the named plaintiffs in the Mississippi Actions.

77.     The Taylor and Pritchard Groups joined more than 200 Asbestos Corporations as defendants in the Mississippi Actions.

78.     Neither the Taylor Group nor the Pritchard Group had the capability or the desire either to aggressively prosecute or try the claims of each of the approximately 5,000 clients whose claims they had joined in the Mississippi Actions. Indeed, the Taylor and Pritchard Groups had never met or interviewed most of those 5000 clients.

79.     Assisted by the Cox Group, the Taylor and Pritchard Groups set out to compromise the claims of their 5,000 clients in the aggregate, without the knowledge or consent of the clients.

80.     Without the knowledge or consent of their clients, the defendants -- the Taylor, Pritchard and Cox Groups -- eventually concluded aggregate settlements with dozens of the defendants in the Mississippi Actions.

**The CCR Settlement**

81.     One such settlement (hereinafter referred to as the "CCR settlement") was concluded on November 3, 1999. The defendants executed, as attorneys for approximately 3,898 clients, including the plaintiffs and the other Class Members, a settlement agreement with eighteen Asbestos Corporations who were defendants in the Mississippi Actions. The eighteen Asbestos Corporations are: (i) Amchem Products, Inc., (ii) Armstrong World Industries, Inc., (iii) Asbestos Claims Management Corp., (iv)

Certain Teed Corp., (v) C.E. Thurston and Sons, Inc., (vi) Dana Corp., (vii) Ferodo America, Inc., (viii) Flexitallic, Inc., (ix) I.U. North America, Inc., (x) Maremont Corp., (xi) National Service Industries, Inc. (xii) Nosroc Corp., (xiii) Pfizer Inc., (xiv) Quigley Company, Inc., (xv) Shook & Fletcher Insulation Co., (xvi) T&N plc and (xvii) United States Gypsum.

82.     The CCR settlement was negotiated by the defendants and it was executed by defendants Taylor, Taylor P.C., Taylor & Cire, Pritchard, Pritchard Law Offices, Cox, and Cox P.C.  The CCR settlement explicitly recites that it was executed by the defendants "as agents for and on behalf of" the group of approximately 3,898 clients that includes the plaintiffs in this action.

83.     As more fully described below, the defendants exercised completely unsupervised discretion in: determining the terms under which they would enter into the CCR settlement, determining when and in what amounts they would distribute the proceeds of the CCR settlement to the plaintiffs and their other clients, and determining the amounts they would deduct from the aggregate settlements and retain as reimbursement of "expenses."

84.     Also as more fully described below, in the exercise of their unlimited, unsupervised discretion, the defendants discriminated against the 2,645 members of the Class to which the plaintiffs in this action belong.  The defendants dictated that the plaintiffs and the other Class Members would each receive an amount substantially less than other groups of the defendants' clients.  This decision was based solely on the fact that the plaintiffs and the other Class Members lived or had been exposed to asbestos in Pennsylvania, Ohio or Indiana.

85.     The CCR settlement provides, among other things, that the plaintiffs and the other Class Members will each receive approximately $14,000.

86.     The CCR settlement provides, among other things, that other groups of Defendants' clients, who are similarly situated to the plaintiffs and the Class Members, will receive between 2 ½ and 18 times as much per person as the plaintiffs and the other Class Members, solely because of the location of the other clients' residences or the places where their asbestos exposure occurred.

87.     According to the CCR settlement, on or about March 1, 2000 in excess of $140,000,000 was to be paid into a fund controlled by the defendants.

88.     Upon information and belief, $140,000,000 or an amount approximately that magnitude, was paid into the fund in or around March 2000.

89.     The fund consists of property belonging to the plaintiffs and the thousands of other individuals covered by the CCR settlement.

90.     As of the date of this complaint, no portion of the CCR settlement fund has been disbursed to the plaintiffs.

91.     Defendants never sought and plaintiffs never gave consent or authorization to the defendants to retain the CCR settlement fund.

92.     Defendants have never informed plaintiffs that defendants are and have been retaining the CCR settlement fund.

93.     At no time have the defendants conveyed to the plaintiffs any information regarding the identity or the nature of the Mississippi Actions in which the plaintiffs had been joined as parties.

94.     At no time before its execution did the defendants inform the plaintiffs of the proposed terms of the CCR settlement.

95.     At no time before its execution did the defendants notify the plaintiffs that the proposed settlement with the CCR was an aggregate settlement, that is, that it would settle the asbestos injury claims of the plaintiffs as well as the claims of thousands of other clients of the defendants.

96.     Before executing the CCR settlement, the defendants did not seek plaintiffs' informed consent to it and plaintiffs did not consent to it.

97.     At no time before the execution of the CCR settlement did the defendants convey to the plaintiffs the amount of the aggregate settlement, the amount that each client included in the aggregate settlement would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the fact that other groups of defendants' clients would be receiving between 2 ½ and 18 times as much as the amount that the defendants were allocating to each of the plaintiffs and the other Class Members, the time at which the plaintiffs would receive the settlement amount, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate settlement amount, or the advantages and disadvantages of entering into the CCR settlement.

98.     At no time before the execution of the CCR settlement did the defendants inform the plaintiffs of the nature of the asbestos personal injury claims asserted by the other clients included in the CCR settlement and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

99.    At no time since the execution of the CCR settlement have the
defendants conveyed to the plaintiffs the information specified in paragraphs 81 through
98 of this complaint.

**Settlement Agreements with other Asbestos Corporations**

100.    Commencing in early 2000 and continuing to date, the defendants,
acting as attorneys for the plaintiffs, have executed agreements with the following
Asbestos Corporations, settling the asbestos personal injury claims of the plaintiffs and
the other Class Members against those corporations:

a.    W. R. Grace & Co.

b.    Owens Corning

c.    Harbison-Walker Refractories Company

d.    Lake Asbestos of Quebec, Ltd.

e.    Johns-Manville Corporation

f.    Babcock & Wilcox Company

g.    Flintkote Company

h.    Ingersoll-Rand Company

i.    Kaiser Aluminum Corporation

j.    HK Porter Company, Inc.

101.    Upon information and belief, the personal injury claims that are the
subject of the above settlements (the "Miscellaneous settlements") had been (or were to
be) included in the Mississippi Actions or other actions that had been commenced by the
defendants.

19

102.   The Miscellaneous settlements are aggregate settlements.

103.   At no time before the executions of the Miscellaneous settlements did the defendants convey to the plaintiffs the proposed terms of the settlements.

104.   At no time before the execution of the Miscellaneous settlements did the defendants inform the plaintiffs that the Miscellaneous settlements were aggregate settlements.

105.   Before executing the Miscellaneous settlements, the defendants did not seek plaintiffs' informed consent to the settlements and plaintiffs did not consent to them.

106.   At no time before the execution of any of the Miscellaneous settlements did the defendants convey to the plaintiffs the amount of the aggregate settlement, the amount that each person included in the aggregate settlement would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amount, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate, or the advantages and disadvantages of entering into the Miscellaneous settlements.

107.   At no time before to the execution of the Miscellaneous settlements did the defendants inform the plaintiffs of the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

108.    At no time since the execution of the Miscellaneous settlements have the defendants conveyed to the plaintiffs the information specified in paragraphs 101 through 107 of this complaint.

109.    In at least one, and upon information and belief, several more, of the Miscellaneous settlements, defendants have withheld money from plaintiffs, representing that the money was being held in "trust".

110.    For example, in early 2001, the Taylor Group notified the plaintiffs that, in addition to its 40% fee and its "expenses," the Taylor Group was retaining an additional amount, in excess of 12% of the award, in "trust."

111.    Neither the Taylor Group nor any of the other defendants have ever identified to the plaintiffs the "trustee" of the withheld funds, nor have they conveyed to the plaintiffs the terms under which the funds are held in "trust."

112.    The defendants never explained these withholdings to the plaintiffs, and the plaintiffs never consented or authorized these withholdings.

113.    The expenses charged by the defendants to the plaintiffs in the Miscellaneous settlements have never been documented.

114.    The expenses charged by the defendants to the plaintiffs in the Miscellaneous settlements are inflated, inappropriate and in some instances, fictitious.

**Other Settlements**

115.    Upon information and belief, the defendants have executed agreements with Asbestos Corporations other than those specified in paragraphs 81 and 100 of this complaint.

116.   Upon information and belief, when in the course of the instant action these other agreements are disclosed, it will be apparent that the defendants engaged in misconduct with respect to those agreements identical or similar to the misconduct alleged above (*supra* at ¶ ¶ 83-99, 103-114 of this complaint).

117.   In connection with the misconduct alleged in paragraphs 88 through 104 and 108 through 118 of this complaint, the defendants acted willfully and wantonly, or with reckless disregard for the rights of the plaintiffs.

## CLASS ACTION ALLEGATIONS

118.   Plaintiffs file this complaint on behalf of themselves and on behalf of a class of persons under Rules 23(a) and 23(b)(1), (2) and (3), Fed. R. Civ. P.

**Class Definition**

119.   The named plaintiffs assert this case on behalf of themselves and all others similarly situated (the "Class"), which consists of:

> Approximately 2,645 persons who reside or had substantial exposure to asbestos in Pennsylvania, Ohio or Indiana and have been or are represented by the defendants with respect to asbestos personal injury claims.

**Numerosity**

120.   The Class consists of approximately 2,645 individuals and is therefore so numerous that joinder of all Class Members is impracticable.

**Existence of Common Questions of Law and Fact**

121.   All members of the Class have been damaged by the same wrongful acts or failures to act that are alleged in this complaint, affecting the Class as a whole.  Consequently, there are questions of law and/or fact common to the Class which

predominate over any questions affecting individual members.  These questions include, but are not limited to:

a.      What duties were owed to the Class by Defendants;

b.      What duties were breached by Defendants;

c.      Whether Defendants failed to disclose material facts and risks regarding Defendants' representation of multiple clients with potentially conflicting interests, and failed to seek the informed consent of Class members regarding such representation;

d.      Whether Defendants failed  to disclose the nature, scope and status of the actions in which Defendants represented Plaintiffs;

e.      Whether Defendants negotiated and executed agreements settling the Class Members' asbestos personal injury claims without the knowledge and informed consent of the Class Members.

f.      Whether Defendants executed unauthorized aggregate settlement agreements on behalf of the Class.

g.      Whether Defendants intentionally concealed or failed to disclose material information to the Class Members in connection with their representation and in connection with the aggregate settlement agreements reached on their behalf;

h.      Whether Defendants failed to disclose to Class Members the nature, terms, amounts and procedures for distributing funds received by Defendants in connection with aggregate settlement agreements made on behalf of the Class Members, the amount of legal fees and expenses that would be

charged or the advantages and disadvantages of entering into the aggregate settlements.

      i.      Whether Defendants failed to disclose to Class members that under at least one undisclosed aggregate settlement executed by Defendants, the amount that was to be received by groups of Defendants' clients *other* than the Class Members is between 2 ½ to 18 times as much as the amount to be received by each of the Class Members, and that this discrepancy is based solely on the location of the other clients' residences or the states in which they were exposed to asbestos;

      j.      Whether Defendants adequately informed the Class Members regarding the allocation of attorneys' fees and expenses in connection with their representation;

      k.      Whether Defendants improperly withheld settlement funds from the Class Members, without the knowledge, consent or authorization of the Class Members;

      l.      Whether the defendants falsely informed Class Members that a portion of the settlement funds that are the property of the Class Members is held in trust;

      m.      Whether the defendants failed to provide the Class Members with copies of all settlement agreements that concern the Class Members;

      n.      Whether the defendants failed to provide the Class Members with an accounting of all funds received in connection with the settlement agreements;

o.      Whether Defendants' acts and omissions constituted a breach of fiduciary duty owed to the Class Members;

p.      Whether, in representing the interests of the Class Members, Defendants exercised the appropriate standard of care required of attorneys in similar circumstances;

q.      Whether Defendants' unauthorized retention of settlement funds that are the property of the Class Members constitutes conversion;

r.      Whether the members of the Class are entitled to injunctive relief;

s.      Whether the members of the Class have sustained damages as a result of Defendants' acts and omissions;

t.      Whether the Defendants' acts and omissions were willful and/or intentional;

u.      The appropriate equitable and monetary class-wide remedies that should be awarded; and

v.      Whether members of the Class should be awarded punitive damages, and if so, what is the proper measure of such damages.

**Typicality**

122.    Plaintiffs are members of the Class of individuals described in paragraph 119 of this complaint who were victimized by the conduct of Defendants as described in this complaint.  The claims of the named plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class, because they all have suffered from the same wrongful acts and omissions of the Defendants.  Thus, Plaintiffs and each member of the Class suffered and continue to

suffer monetary damage as a result of Defendants' wrongful conduct, as well as injuries that require equitable relief. All such claims are based on the same operative facts and the same legal theories.

123.   The named plaintiffs are committed to the vigorous prosecution of this action and their interests are coincident and not antagonistic to those of the other members of the Class. Furthermore, Plaintiffs have retained counsel qualified to pursue this litigation who have extensive experience in class action litigation and are familiar with the subject matter of this case. Accordingly, Plaintiffs will fairly and adequately protect the interests of the Class.

124.   The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action. Multiple actions would also cause undue hardship and expense for both the court system and the litigants, because identical issues would repeatedly have to be re-litigated by new plaintiffs against Defendants, thereby denying all parties the benefits of economies of scale.

125.   The defendants have acted and failed to act on grounds generally applicable to the Class, thereby making it appropriate to order an accounting and other equitable relief with respect to the Class as a whole.

126.   A class action is far superior to other methods available for the fair and efficient adjudication of this controversy for the following reasons:

a.      Without a class action, Defendants' illegal conduct will continue without remedy and Defendants will continue to enjoy the proceeds of their unlawful misconduct;

b.      Given the substantive complexity of this litigation, the size of the individual Class Members' claims and the limited resources of Class Members, few, if any, Class Members could afford to seek legal redress individually for the wrongs that the defendants have committed against them;

c.      A class action will foster an orderly and expeditious administration of each Class Member's claims, economies of time, effort and expense and uniformity of decision.

127.     A class action regarding the issues in this case creates no problems of manageability.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – The CCR Settlement)

128.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 127 of this complaint.

129.     As attorneys acting for the plaintiffs, the defendants owed and continue to owe a fiduciary duty to the plaintiffs.

130.     The defendants have breached their fiduciary duties to plaintiffs by, among other things, failing to seek or obtain plaintiffs' informed consent to the CCR settlement.

131.     The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform plaintiffs of the: identity and nature of the Mississippi Actions and any other actions in which the defendants have joined them, the terms of the CCR settlement, the total amount of the CCR settlement, the amounts that each client included in the CCR settlement would receive (or the procedures for

deciding how the aggregate amount would be divided between the clients), the fact that the allocation of the CCR settlement fund discriminates against the plaintiffs solely on the basis of geography, the time at which the plaintiffs would receive the settlement amount, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate amount of the CCR settlement and the advantages and disadvantages of entering into that settlement.

132.   The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform them of the nature of the asbestos personal injury claims asserted by the other clients included in the CCR settlement and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

133.   The defendants have breached their fiduciary duties to the plaintiffs by, among other things, retaining CCR settlement funds that are the property of the plaintiffs, without the plaintiffs' knowledge, consent and authorization.

134.   As a result of the defendants' breaches of fiduciary duty, each of the plaintiffs has suffered damages in an amount to be proved at trial, but in excess of $150,000.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – The Miscellaneous Settlements)

135.   Plaintiffs repeat and reallege the allegations of paragraphs through   of this complaint.

136.   As attorneys acting for the plaintiffs, the defendants owed and owe a fiduciary duty to the plaintiffs.

137.   The defendants have breached their fiduciary duties to plaintiffs by, among other things, failing to seek or obtain plaintiffs' informed consent to the Miscellaneous settlements.

138.   The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform plaintiffs of the: identity and nature of lawsuit or lawsuits in which they had been made parties, the terms of the Miscellaneous settlements, the total amounts of the Miscellaneous settlements, the amounts that each client included in the Miscellaneous settlements would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amounts, the amount of legal fees and expenses that would be charged, whether those fees and expenses would be deducted from the aggregate amounts of the Miscellaneous settlements, and the advantages and disadvantages of entering into those settlements.

139.   The defendants have breached their fiduciary duties to the plaintiffs by, among other things, failing to inform them: of the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements, and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

140.   The defendants have breached their fiduciary duties to the plaintiffs by, among other things, retaining from the Miscellaneous settlements funds that are the property of the plaintiffs, without the plaintiffs' knowledge, consent or authorization; retaining portions of settlement funds in so-called "trust," without the

plaintiffs' knowledge, consent and authorization, and charging inflated, inappropriate and
fictitious fees to the plaintiffs.

141.   As a result of the defendants' breaches of fiduciary duty, each of
the plaintiffs has suffered damages in an amount to be proved at trial, but in excess of
$150,000.


### THIRD CLAIM FOR RELIEF
(Fraud – The CCR Settlement)

142.   Plaintiffs repeat and reallege the allegations of paragraphs 1
through 141 of this complaint.

143.   The defendants failed to disclose to the plaintiffs, among other
things, the identity and nature of the Mississippi Actions and any other actions in which
the defendants have joined them, the terms of the CCR settlement, the total amount of the
CCR settlement, the amounts that each client included in the CCR settlement would
receive (or the procedures for deciding how the aggregate amount would be divided
between the clients), the fact that the allocations of settlement funds under the CCR
settlement discriminates against the plaintiffs solely on the basis of geography, the time at
which the plaintiffs would receive the settlement amount, the amount of legal fees and
expenses that would be charged, whether those fees and expenses would be deducted
from the aggregate amount of the CCR settlement and the advantages and disadvantages
of entering into that settlement.

144.   The defendants failed to disclose to the plaintiffs, among other
things: the nature of the asbestos personal injury claims asserted by the other clients
included in the CCR settlement, that the defendants' simultaneous representation of the

plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest and that the CCR settlement discriminates against similarly situated clients solely on the basis of geography.

145.   The defendants failed to disclose to the plaintiffs that other groups of defendants' clients would be receiving between 2 ½ and 18 times as much of the CCR settlement fund as the amount that the defendants were allocating to each of the plaintiffs and the other Class Members

146.   The defendants failed to disclose to the plaintiffs, among other things, that the defendants are retaining or have retained CCR settlement funds that are the property of the plaintiffs.

147.   All the facts that the defendants have failed to disclose are material.

148.   As attorneys for the plaintiffs, the defendants had and have a duty to disclose to the plaintiffs all facts material to the plaintiffs' asbestos personal injury claims and to the resolution of those claims.

149.   The defendants failed to disclose the material facts set forth in paragraphs of this complaint with the intent to bind the plaintiffs to the CCR settlement.

150.   The defendants failed to disclose the material facts set forth in paragraphs143 through 146 of this complaint with the intent to induce the plaintiffs to accept a smaller portion of the CCR settlement fund than they otherwise would have.

151.   The defendants failed to disclose the material facts set forth in paragraphs 81 through 99 of this complaint with the intent to deprive the plaintiffs of funds belonging to the plaintiffs.

152.    The plaintiffs were unaware of the facts that the defendants failed to disclose.

153.    Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, alter or object to the discriminatory terms or any other terms of the CCR settlement.

154.    Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, object to defendants' retention of the CCR settlement fund.

155.    As a consequence of defendants' failure to disclose the material facts, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

### FOURTH CLAIM FOR RELIEF
(Fraud – The Miscellaneous Settlements)

156.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 155 of this complaint.

157.    Defendants failed to disclose to the plaintiffs, among other things, the identity and nature of the lawsuit or lawsuits in which they were joined, the terms of the Miscellaneous settlements, the total amounts of the Miscellaneous settlements, the amounts that each client included in the Miscellaneous settlements would receive (or the procedures for deciding how the aggregate amount would be divided between the clients), the time at which the plaintiffs would receive the settlement amounts, the amount of legal fees and expenses that would be charged, whether those fees and

expenses would be deducted from the aggregate amounts of the Miscellaneous settlements, and the advantages and disadvantages of entering into those settlements.

158.    The defendants failed to disclose to the plaintiffs, among other things: the nature of the asbestos personal injury claims asserted by the other clients included in the Miscellaneous settlements, and that the defendants' simultaneous representation of the plaintiffs and thousands of additional clients gave (or could give) rise to a conflict of interest.

159.    The defendants failed to disclose the identity and nature of the "trusts" in which some of the settlement funds belonging to plaintiffs are supposedly held. The defendants failed to disclose the identity of the trustee and the terms of the trust.

160.    All the facts that the defendants have failed to disclose are material.

161.    As attorneys for the plaintiffs, the defendants had and have a duty to disclose to the plaintiffs all facts material to the plaintiffs' asbestos personal injury claims and to the resolution of those claims.

162.    The defendants failed to disclose the material facts set forth in paragraphs 157 through 159 of this complaint with the intent to bind the plaintiffs to the Miscellaneous settlements.

163.    The defendants failed to disclose the material facts set forth in paragraphs 157 through 159 of this complaint with the intent to induce the plaintiffs to accept a smaller portion of the Miscellaneous settlements than they otherwise would have .

164.    The defendants failed to disclose the material facts set forth in paragraphs 157 through 159 of this complaint with the intent to deprive the plaintiffs of funds belonging to the plaintiffs.

165.    The plaintiffs were unaware of the facts that the defendants failed to disclose.

166.    Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, alter or object to the discriminatory terms or any other terms of the Miscellaneous settlements.

167.    Plaintiffs relied on the material omissions of defendants, because as a result of the material omissions, plaintiffs were deprived of the opportunity to, and did not, object to defendants' retention of the Miscellaneous settlement funds in "trust."

168.    As a consequence of defendants' failure to disclose the material facts, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

## FIFTH CLAIM FOR RELIEF
(Fraud – The Miscellaneous Settlements)

169.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 168 of this complaint.

170.    The defendants' representation to the plaintiffs that a portion of the settlement funds belonging to the plaintiffs are being held in "trust" is a material fact.

171.    That representation was known by the defendants to be false at the time the defendants made it.

172.   The defendants made the false representation to deprive the plaintiffs of funds belonging to the plaintiffs.

173.   The plaintiffs were unaware of the falsity of the representations.

174.   In reliance on the false representations plaintiffs have foregone funds that in fact belong to them.

175.   As a result of the plaintiffs' forbearance, each of them has been damaged in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF
### (Conversion)

176.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 175 of this complaint.

177.   Defendants' retention of the CCR settlement funds and their retention of portions of settlement funds in "trust" constitute an intentional exercise of dominion and control over property belonging to the plaintiffs.

178.   The defendants' exercise of dominion and control is to the exclusion of plaintiffs' rights in the funds.

179.   As a consequence of the foregoing, the plaintiffs have been damaged in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF
### (Conspiracy to Defraud, Convert and Breach Fiduciary Duty)

180.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 179 of this complaint.

181.    The defendants have acted and continue to act for the common

purpose of defrauding the plaintiffs, converting property that belongs to the plaintiffs, and

violating the plaintiffs' rights (in the manner set forth in this complaint).

182.    In furtherance of this common purpose, the defendants have,

among other things, committed the following overt acts: executing the CCR settlement,

executing the Miscellaneous settlements, intentionally withholding material information

relating to these settlements from plaintiffs, unlawfully retaining CCR settlement funds

and Miscellaneous settlement funds, and misrepresenting Miscellaneous settlement funds

belonging to the plaintiffs as being held in "trust."

183.    The defendants' conduct was intended to and did injure the

plaintiffs, in the amount to be proved at trial, but in excess of $150,000.

184.    By reason of the foregoing, Defendants are liable for conspiracy.


### EIGHTH CLAIM FOR RELIEF
(Professional Malpractice)

185.    Plaintiffs repeat and reallege the allegations of paragraphs 1

through 184 of this complaint.

186.    Commencing in 1995 and continuing to date, the defendants have

acted as attorneys for the plaintiffs.

187.    By engaging in the conduct described in paragraphs 81 through

117 of this complaint, the defendants failed to exercise the degree of competence and

diligence exercised by lawyers in similar circumstances.

188.   As a result of the misconduct alleged in the preceding paragraph, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

## NINTH CLAIM FOR RELIEF
### (Violation of Deceptive Trade Practices and Consumer Protection Law)

189.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 188 of this complaint.

190.   As noted in paragraphs 109 and 110 of this complaint, the defendants have made express misrepresentations of material fact that cannot be characterized as opinion, advice or judgment.

191.   As noted in paragraphs 81 through 127 of this complaint, the defendants have failed to disclose material information in an effort to induce particular conduct on the part of the plaintiffs.

192.   By reason of the defendants' violations of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, each of the plaintiffs has been damaged in an amount to be proved at trial, but in excess of $150,000.

## TENTH CLAIM FOR RELIEF
### (Injunction Ordering Disclosure to Plaintiffs of all Settlement Agreements)

193.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 192 of this complaint.

194.    The defendants have failed and refused to provide the plaintiffs with copies of any of the settlement agreements executed by the defendants with Asbestos Companies concerning the asbestos personal injury claims of the plaintiffs.

195.    The defendants' failure and refusal constitute a breach of fiduciary duty, intentional failure to disclose material facts and professional malpractice.

196.    The defendants' failure and refusal to provide the settlement agreements is causing irreparable injury to the plaintiffs, because, among other things, it deprives them of any opportunity to determine the number of such agreements that have been executed and the extent of their true entitlement under those agreements.

197.    The defendants' failure and refusal to provide the settlement agreements is causing irreparable injury to the plaintiffs, because, among other things, it prevents them from determining the full extent of the damage that has been caused by the defendants' misconduct.

198.    Plaintiffs have no adequate remedy at law for the injuries specified in the two preceding paragraphs.

199.    By reason of the foregoing, the plaintiffs are entitled to an order commanding the defendants immediately to provide to the plaintiffs copies of all settlement agreements made with Asbestos Corporations that concern or involve the plaintiffs.

**ELEVENTH CLAIM FOR RELIEF**
(Forfeiture and Disgorgement of Attorneys' Fees)

200.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 199 of this complaint.

201.     By reason of the breaches of fiduciary duty, misrepresentations, intentional failures to disclose material facts and acts of professional malpractice, the defendants are required to disgorge to plaintiffs all attorneys' fees received by defendants in connection with their representation of the plaintiffs.

## TWELFTH CLAIM FOR RELIEF
### (For an Accounting)

202.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 201 of this complaint.

203.     There is a fiduciary relationship between the defendants and each of the plaintiffs.

204.     The defendants have never provided the plaintiffs with copies of the settlement agreements entered into with the Asbestos Corporations on plaintiffs' behalf or with an account of the amounts due to plaintiffs under those settlement agreements.

205.     The defendants have never provided the plaintiffs with an account of the expenses charged by the defendants to the plaintiffs.

206.     The defendants have never provided the plaintiffs with an account of funds belonging to the plaintiffs that the defendants are holding in "trust."

207.     Plaintiffs have no adequate remedy at law.

208.     By reason of the foregoing, the plaintiffs are entitled to copies of all settlement agreements and related documents pertaining to the settlements executed by defendants on plaintiffs' behalf and to an accounting by the defendants of the gross amounts received by the defendants in connection with the settlements alleged above

(¶ ¶ 81 and 100 of this complaint), the amounts remitted to the plaintiffs pursuant to those

settlements, the amounts remitted by the defendants to third parties in connection with

those settlements, the amounts charged by the defendants to the plaintiffs as expenses and

the amounts held in "trust" by the defendants.

WHEREFORE, each of the plaintiffs demands judgment from the

defendants, jointly and severally:

(i)     certifying an appropriate class, appointing Plaintiffs as

class representatives and appointing Plaintiffs' counsel as

lead class counsel;

(ii)    for compensatory damages in an amount to be proved at

trial, but in excess of $150,000.

(iii)   for forfeiture and disgorgement of all legal fees charged by

the defendants;

(iv)    for punitive damages in an amount to be determined at trial,

but in excess of $500,000;

(v)     for an accounting of all money collected and spent by the

defendants on behalf or for the benefit of the plaintiffs and

the other members of the Class;

(vi)    for an order compelling the defendants immediately to

provide the plaintiffs with copies of all settlement

agreements executed with Asbestos Corporations regarding

the asbestos personal injury claims of the plaintiffs or the

other members of the Class;

(vii)    and such other relief as is just.

DATED:  Philadelphia, Pennsylvania
        February 6, 2002

Carol A. Mager   Pa.I.D. No. 17548
Marjory P. Albee Pa.I.D. No. 28150
Michael D. Homans Pa.I.D. No. 76624
Mager & White, P.C.
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA  19103
(215) 569-6924

Alan Levine
Joseph D. Pope
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
47th Floor
New York, New York  10036
(212) 479-6000