IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD L. HUBER, WILLIAM J. AIRGOOD, ANTHONY DeFABBO, JOHN DINIO, ERNEST GISHNOCK, JOHN BIDLENSCIK, HILMA MULLINS and WILLIAM DEEM, | : : : : : : | CIVIL ACTION NO. 02-0304 (Magistrate Judge Lisa Pupo Lenihan) |
| Plaintiffs, | : : | |
| v. | : : | |
| ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, II P.C.; R.G. TAYLOR, II, P.C.; ESTATE OF ROBERT A. PRITCHARD; PRITCHARD LAW FIRM, PLLC; JOSEPH B. COX, JR.; JOSEPH B. COX, JR. LTD. and COX AND COX, L.L.P., | : : : : : : : : | |
| Defendants. | : : : : | |

**DEFENDANTS' JOINT MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>LEAVE TO FILE THIRD AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

PROCEDURAL BACKGROUND ................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

I.  LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE WITH RESPECT TO ALL THREE CLAIMS. ........................................................ 4

    A.  Futility With Respect To The Breach Of Fiduciary Duty Claim. ................................ 4

        1.  Amendment Would Be Futile Because The Allegations Are Insufficient Under Fed. R. Civ. P. 12(b)(6) And 8(a)(2). ......................................................................... 4

           a.  Futility Standard Under Fed. R. Civ. P. 15(a). ............................................... 4

           b.  Pleading Standard Under Fed. R. Civ. P. 12(b)(6) And 8(a)(2). .................... 4

           c.  The Proposed Breach Of Fiduciary Duty Claims Fails To Satisfy The Twombly/Iqbal Standard. ................................................................................ 6

        2.  The Factual Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim Is Contrary To The Mandate And Law Of The Case Established On Appeal. ............................ 9

           a.  The "Mandate" Rule And "Law-of-the-Case" Doctrine ................................. 9

           b.  The Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim Is Contrary To The Mandate And Law Of The Case. ............................................................. 11

        3.  Taylor's Co-Counsel Agreements with Local Counsel And Southern Co-Counsel, Which The Court May Properly Consider Here, Contradict The "Fee-Splitting"/ "Fee-Incentive" Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim. ................... 13

           a.  The Court May Properly Consider Taylor's Co-Counsel Agreements ................. 13

           b.  Taylor's Co-Counsel Agreements Contradict Plaintiffs' "Fee-Splitting"/"Fee-Incentive" Theory of Breach ........................................................................ 15

    B.  Futility With Respect To Conspiracy To Breach Fiduciary Duty Claim ..................... 17

    C.  Futility With Respect To Aiding and Abetting Breach Of Fiduciary Duty Claim. ....... 21

II.  AMENDMENT WOULD BE FUTILE AND PREJUDICIAL WITH RESPECT TO THE PROPOSED RULE 23(b)(2) CLASS ACTION ALLEGATIONS ................................... 22

A.   Plaintiffs Did Not Appeal Judge Schwab's Class Certification Ruling With Respect To Rule 23(b)(2) And Thus Waived The Issue And Relinquished Their Right To Re-Litigate That Basis For Class Certification..................................................................... 22

B.   Plaintiffs' Rule 23(b)(2) Allegations Exceed The Scope Of Remand. ......................... 23

C.   Defendants Will Be Prejudiced By The Rule 23(b)(2) Sham Allegations. .................. 23

CONCLUSION.......................................................................................................................... 25

# **TABLE OF AUTHORITIES**

Page(s)

CASES

ACLU v. Mukasey,
  534 F.3d 181 (3d Cir. 2008).........................................................................10

Adams v. Teamsters Local 115,
  214 Fed. Appx. 167 (3d Cir. 2007).............................................................19

Appalachian Enter., Inc. v. ePayment Solutions, Ltd.,
  2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) .............................................8

Aramony v. United Way of America,
  254 F.3d 403 (2d Cir. 2001).........................................................................10

Ashcroft v. Iqbal,
  -- U.S. --, 129 S. Ct. 1937 (2009) ...................................................... passim

Bankers Trust Co. v. Bethlehem Steel Corp.,
  761 F.2d 943 (3d ir. 1985) ...........................................................................10

Beck v. Maximus, Inc.,
  457 F.3d 291 (3d Cir. 2006).........................................................................23

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................... passim

Beverly Hills Bancorp. v. Hine,
  752 F.2d 1334 (9th Cir. 1984) .....................................................................11

Black & Yates, Inc. v. Mahogany Ass'n,
  129 F.2d 227 (3d Cir. 1942)..........................................................................20

Disimone v. Browner,
  121 F.3d 1262 (9th Cir. 1997) .....................................................................10

Huber v. Taylor,
  469 F.3d 67 (3d Cir. 2006)..........................................................11, 12, 17, 23

Huber v. Taylor,
  532 F.3d 237 (3d Cir. 2008)............................................................3, 11, 12

Huber v. Taylor,
  519 F. Supp. 2d 542 (W.D. Pa. 2007)..........................................3, 11, 12

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997)......................................................4, 13, 15

In re City of Philadelphia Litig.,
    158 F.3d 711 (3d Cir. 1998)............................................................................10, 17

In re Donald J. Trump Casino Sec. Litig.,
    7 F.3d 357 (3d Cir. 1993)..............................................................................13, 15

In re Sagent Tech., Inc. Derivative Litig.,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................................8

Institute for Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.,
    931 F.2d 1002 (3d Cir. 1991)................................................................................23

Jones v. Lockett,
    2009 WL 2232812 (W.D. Pa. July 23, 2009) ..................................................14, 20

Kastner v. Jenkens & Gilchrist, P.C.,
    231 S.W.3d 571 (Tex. App.-Dallas 2007) ...........................................................22

Kemezis v. Matthew,
    2008 WL 5191587 (E.D. Pa. Dec. 10, 2008) ........................................................20

Kost v. Kozakiewicz,
    1 F.3d 176 (3d Cir. 1993)......................................................................................23

Lewis v. Ford Motor Co.,
    610 F. Supp. 2d 476 (W.D. Pa. 2009)...................................................................14

Lynn v. Christner,
    184 Fed. Appx. 180 (3d Cir. 2006)......................................................................19

Massey v. Armco Steel Co.,
    652 S.W.2d 932 (Tex. 1983)...........................................................................17, 21

Mukamal v. Bakes,
    383 B.R. 798 (S.D. Fla. 2007) ...............................................................................8

Ogbudimkpa v. Ashcroft,
    342 F.3d 207 (3d Cir. 2003)..................................................................................10

Pardini v. Allegheny Intermediate Unit,
    524 F.3d 419 (3d Cir. 2008)........................................................................9, 10, 17

Pension Benefit Guar. Corp. v. White Consol. Indus.,
    998 F.2d 1192 (3d Cir. 1993)..........................................................................13, 14

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008)..............................................................................4, 5

Piambino v. Bailey,
    757 F.2d 1112 (11th Cir. 1985) .................................................................10

Pietrangelo v. NUI Corp.,
    2005 WL 1703200 (D.N.J. July 20, 2005).............................................7

Rose v. Bartle,
    871 F.2d 331 (3d Cir. 1989)......................................................................20

Shane v. Fauver,
    213 F.3d 113 (3d Cir. 2000).........................................................................4

Sung Tran v. Delavau, LLC,
    2008 WL 2051992 (E.D. Pa. May 13, 2008) ..........................................20

United States v. Pelullo,
    399 F.3d 197 (3d Cir. 2005)......................................................................23

Wheeler v. City of Pleasant Grove,
    746 F.2d 1437 (11th Cir. 1984) ...............................................................10

**OTHER AUTHORITIES**

12 Tex. Jur. 3d Civil Conspiracy, at § 1 ....................................................17

## INTRODUCTION AND SUMMARY OF ARGUMENT

After litigating this case for more than seven-and-one-half-years – including the conducting of all merits discovery, which consisted of 38 depositions of 33 witnesses, two appeals to the Third Circuit, and three previous complaints – plaintiffs now seek permission to file a fourth complaint that alleges nothing more than conclusions.  Given that a full evidentiary record exists, that discovery closed more than four years ago, and that this is plaintiffs' fourth complaint concerning claims they contend have been in the case from its inception, it is inexcusable that plaintiffs have failed to assert facts to support their claims.  It is clear they cannot do so.

Furthermore, plaintiffs contend they seek to file a third amended complaint in order for the amended pleading to be "consistent with" the Third Circuit's opinions in the case and "the facts developed through investigation and discovery."  (Pls.' Mem. in Support of Mot. at 1).  The opposite is true.  Plaintiffs have alleged a theory of breach that is contrary to the law of the case because it is premised on harm to plaintiffs from so-called "geographically discriminatory" settlements, a theory the Third Circuit has found is out of this case.  Plaintiffs also allege a new "fee-splitting"/"fee-incentive" theory of breach that is flatly contradicted by defendants' co-counsel fee agreements, which have long been in the record.

Leave to amend should be liberally granted unless amendment would be futile or prejudicial.  Here, granting plaintiffs leave to file their proposed Third Amended Complaint (hereinafter "proposed amended complaint") would be both futile and prejudicial for multiple reasons.

***With respect to the breach of fiduciary duty claim*** (Count I), amendment would be futile based on three distinct and independent grounds:

- <u>First</u>, in determining whether amendment would be futile, a district court applies the same standard for assessing the adequacy of pleadings as applies under Fed. R. Civ. P. 12(b)(6).  Plaintiffs' breach of fiduciary duty claim falls far short of the 12(b)(6) pleading standard announced by the U.S. Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and re-affirmed in <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937 (2009).  Plaintiffs' proposed amended claim contains virtually no supporting facts setting forth the "circumstances, occurrences, and events in support of the claim presented," as there must be to survive a motion to dismiss.  <u>Twombly</u>, 550 U.S. at 556 n.3.

- <u>Second</u>, plaintiffs' proposed breach of fiduciary duty claim is contrary to the mandate and law of the case established on appeal, because it is based on the same theory that was rejected twice by the Third Circuit – i.e., that plaintiffs were harmed by defendants' conduct in negotiating so-called "geographically discriminatory" settlements.

- <u>Third</u>, plaintiffs advance a new "fee-splitting"/"fee-incentive" theory of breach that is patently false.  Plaintiffs allege that defendant Taylor's co-counsel fee agreements with Local Counsel with respect to Taylor's representation of the Northern claimants created an "incentive" for him and the other defendants to structure the settlements in a discriminatory manner so that Southern claimants received higher settlement offers than Northern claimants.  However, record evidence concerning Taylor's co-counsel agreements with Local Counsel and with his Southern co-counsel, which this Court may properly consider in the context of this motion, flatly contradict the "fee-splitting"/"fee-incentive" claim.

***With respect to the conspiracy to breach fiduciary duty and aiding and abetting breach of fiduciary duty claims*** (Counts II and III), amendment would be futile because plaintiffs' allegations fall woefully short of the <u>Twombly/Iqbal</u> pleading standard; indeed, they would fail to state a claim even under the more lenient pre-<u>Twombly</u> pleading standard.  Plaintiffs fail to plead *facts* concerning the time, place, and circumstances surrounding the alleged conspiracy and aiding and abetting conduct, as they must to state a claim.  Additionally, in light of the deficiencies of the underlying breach of fiduciary duty claim, the conspiracy and aiding and abetting claims necessarily fail.

***With respect to plaintiffs' Rule 23(b)(2) class allegations***, amendment would be futile and unduly prejudicial for three reasons:  (i) plaintiffs did not appeal Judge Schwab's class

2

certification ruling with respect to Rule 23(b)(2) and thus relinquished their right to re-litigate that basis for class certification; (ii) plaintiffs' Rule 23(b)(2) allegations exceed the scope of the Third Circuit's remand in Huber I, which was limited to consideration of class certification with respect to Rule 23(b)(1) and (b)(3); and (iii) defendants will be prejudiced by the Rule 23(b)(2) allegations, which are a thinly-veiled stratagem to cloak plaintiffs' demand for money as one primarily for prospective injunctive and declaratory relief in order to avoid the stringent predominance requirements of Rule 23(b)(3).  This case has always been, and still is, about plaintiffs' desire for more money.

## PROCEDURAL BACKGROUND

The lengthy and complex procedural history of this case is set forth in this Court's April 27, 2007 opinion, which defendants incorporate by reference herein.  Huber v. Taylor, 519 F. Supp. 2d 542, 551-53 (W.D. Pa. 2007), rev'd on other grounds, 532 F.3d 237 (3d Cir. 2008). On June 19, 2009, Judge Schwab granted plaintiffs' motion for recusal and specifically denied plaintiffs request to set aside the Court's previous rulings.  On June 22, 2009, the case was reassigned to Magistrate Judge Lisa Pupo Lenihan and all parties consented to her jurisdiction. On July 24, 2009, the Court held a status conference, immediately after which the Court set a briefing schedule for plaintiffs' present motion for leave to file third amended complaint and defendants' responses thereto.

**ARGUMENT**

**I.**     **LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE WITH RESPECT TO ALL THREE CLAIMS.**

    **A.**     **Futility With Respect To The Breach Of Fiduciary Duty Claim.**

        **1.**     **Amendment Would Be Futile Because The Allegations Are Insufficient Under Fed. R. Civ. P. 12(b)(6) And 8(a)(2).**

            **a.**     **Futility Standard Under Fed. R. Civ. P. 15(a).**

Under Fed. R. Civ. P. 15(a)(2), after amending once or after an answer is filed, a plaintiff may amend only with leave of court or written consent of the opposing party, and leave shall be "freely give[n] . . . when justice so requires." The denial of an opportunity to amend is within the discretion of the district court. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Among the grounds justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility." Id., citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means "that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane, 213 F.3d at 115, citing Burlington, 114 F.3d at 1434. Thus, in assessing futility, "the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id.

            **b.**     **Pleading Standard Under Fed. R. Civ. P. 12(b)(6) And 8(a)(2).**

The legal sufficiency of the claims set forth in the proposed amended complaint must be assessed in light of the U.S. Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1953 (2009) (stating Twombly "expound[s] the pleading standard for all civil actions"), as well as the Third Circuit's opinion in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) (discussing Twombly).

In Twombly, the Supreme Court "disavowed" the standard used for many years by courts considering motions to dismiss under Fed. R. Civ. P. 12(b)(6) – i.e., that a court may not dismiss

4

a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Phillips, 515 F.3d at 230, 232, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and citing Twombly, at 561-62.

Twombly's re-assessment of the pleading standard turned on its reading of Fed. R. Civ. P. 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, and re-affirmed in Iqbal, Rule 8 demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949, citing Twombly, at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., citing Twombly, at 557. Rule 8(a) contemplates a "statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it." Twombly, 550 U.S. at 556 n.3. Although "detailed" facts are not necessary, a complaint must give "fair notice of the nature of the claim" and the "grounds on which the claim rests." Id. (internal quotations omitted).

The Court in Iqbal identified two "working principles" to guide the district court's Rule 12(b)(6) analysis. Iqbal, 129 S. Ct. at 1949-50. First, the tenet that a court must accept as true all of the allegations in a complaint is "inapplicable to legal conclusions," to "a legal conclusion couched as a factual allegation," or to "conclusory statements." Id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Second, only a complaint that states a "plausible claim for relief" survives a motion to dismiss. Id. at 1950, citing Twombly, at 556. A complaint must contain "sufficient factual matter" accepted as true, to "state a claim to relief that is plausible on its face." Id. at 1949, citing

5

Twombly, at 570.  Where well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, "the complaint has alleged – but it has not 'shown' – that the pleader

is entitled to relief under Rule 8(a)(2)." Id. at 1950.  Determining whether a complaint states a

plausible claim for relief is a "context-specific task" that requires the district court "to draw on

its judicial experience and common sense." Id. at 1950.

In keeping with these principles, a court considering a motion to dismiss "begin[s] by

identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." Iqbal, 129 S. Ct. at 1950.  Having identified "well-pleaded factual

allegations," a court "should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." Id.

### c.    The Proposed Breach Of Fiduciary Duty Claims Fails To Satisfy The Twombly/Iqbal Standard.

The breach of fiduciary duty claim consists of the first 23 paragraphs in the proposed

amended complaint and four paragraphs under Count I.  (Third Am. Compl. ¶¶ 1-27).  Virtually

all of the allegations contained in these 27 paragraphs are legal conclusions, legal conclusions

"couched as factual allegations," or "conclusory statements" without any "further factual

enhancement." Iqbal, 129 S. Ct. at 1949-50.  Many paragraphs simply identify the parties, the

remedies sought, the general nature of plaintiffs' claim, and the basis upon which plaintiffs have

brought a class action that merely parrots Rule 23's legal requirements.[1]

---

[1] For example, paragraph 1, under the heading "gist of complaint," is a blanket assertion that all of the defendants committed breaches of fiduciary duties with conclusory statements concerning the nature of the breaches.  (See Third Am. Compl. ¶ 1: "In breach of fiduciary duties owed to plaintiffs . . .defendants put the interests of other individuals in the litigation and their own financial interests ahead of plaintiffs' interests . . . rather than fulfill their duties to plaintiffs as their attorneys, defendants denied such duties existed.").  Paragraphs 2, 15 and 16 set forth the remedies plaintiffs seek.  (See id. ¶ 2: "Plaintiffs seek injunctive, declaratory and other forms of equitable relief.  Plaintiffs request forfeiture by defendants of fees obtained in violation of duties owed to plaintiffs and the proposed class"; ¶ 15: "This suit is brought . . . to prevent further breaches of fiduciary duties by defendants, to require defendants to provide

The three substantive paragraphs under Count I (¶¶ 25-27) make blanket assertions concerning the existence of fiduciary duties and defendants' breaches.  Paragraph 25 contains a pure legal conclusion ("defendants owed and continue to owe fiduciary duties to their clients under Texas law").  Paragraphs 26 and 27 purport to identify the nature of the alleged breaches without supporting facts.  (See ¶ 26:  "Defendants have breached their fiduciary duties to plaintiffs and the proposed class by, among other things, failing to make material disclosures regarding conflicts resulting from their representation of numerous individuals with conflicting interests" . . . [and] "failing to seek and obtain informed consent to said representations"; ¶ 27: defendants failed to inform plaintiffs and proposed class members of "the material terms of the various settlements", "potential conflicts with respect to allocation of settlement amounts", [and] "that settlements discriminated against plaintiffs and the class."  Defendants "also breached fiduciary duties  . . . by charging and receiving excessive attorneys' fees and expenses . . . .").

*None* of these allegations contains a single, supporting *fact* concerning what each defendant did or did not do, or when, how, or with respect to which settlements the alleged breaches occurred.  Even under the more lenient, pre-Twombly pleading standard, these "group" allegations fail to state a claim.  See Pietrangelo v. NUI Corp., 2005 WL 1703200, at *1, 10 (D.N.J. July 20, 2005) (holding breach of fiduciary duty claim failed to satisfy "even the liberal notice pleading standard of Rule 8(a) because plaintiff fails to differentiate between the

---

disclosure mandated by Texas law . . . and to force defendants to fully discharge their duties of loyalty and candor"; ¶ 16:  "Plaintiffs and the proposed class are entitled to a full accounting for fees and expenses previously obtained by defendants in violation of duties owed to plaintiffs and the proposed class. . . . . Punitive damages are appropriate under Texas law because defendants' actions were intentional, fraudulent and willful").  Paragraph 3 recites the legal standards for jurisdiction and venue. Paragraphs 4 through 8 recite the names, citizenship, and principal places of business of the parties, and contain no substantive allegations.  Paragraph 9 identifies the asbestos diagnosis of the plaintiffs. Paragraphs 17 through 23 contain conclusory class-action allegations, including the definition of the proposed class, a recitation of the legal requirements of class certification under Rule 23(a), (b)(1) and (b)(2), and bald assertions that plaintiffs meet those requirements and are entitled to the remedies sought.

defendants.  Plaintiff's complaint instead lumps all of the defendants together and accuses every

defendant of breaching all of the asserted fiduciary duties"; holding "the allegations are so

general that they fail to put each defendant on notice of the claims against them") (attached to

Appendix of Unreported Cases at Tab 1).[2]

The *only* allegations that purport to state a *factual basis* for the claim are contained in

five paragraphs under the heading "Relevant Background."  (Id. ¶¶ 10-14).  Paragraphs 10

through 13 describe the relationships among co-counsel and defendants' strategy in joining

plaintiffs and the Northern claimants to the Mississippi actions.  Even if deemed to be "well-

pleaded factual statements" and accepted as true, these allegations do not state a plausible

entitlement to relief.  None alleges conduct constituting a breach of fiduciary duty.[3]

The only arguably *factual* allegations of misconduct appear in paragraphs 11 and 14.  The

gist of plaintiffs' allegations in these paragraphs is that defendants' co-counsel fee agreements

---

[2] See also Mukamal v. Bakes, 383 B.R. 798, 826-27 (S.D. Fla. 2007) (dismissing breach of fiduciary duty
claim against defendant officers of corporation because complaint "fails to allege individualized
allegations as to each Defendant . . . . Instead, the Complaint refers to them collectively in every
instance"); In re Sagent Tech., Inc. Derivative Litig., 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003)
(granting motion to dismiss breach of fiduciary duty claims against individual defendants under liberal
pleading requirements of Rule 8(a), noting plaintiffs "do not indicate which individual defendant or
defendants were responsible for which alleged wrongful act"); Appalachian Enter., Inc. v. ePayment
Solutions, Ltd., 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("A pleading fails to satisfy rule 8
where the Complaint lump[s] all the defendants together and fail[s] to distinguish their conduct")
(attached to Appendix of Unreported Cases at Tab 2).

[3] Paragraph 10 states that Taylor entered into co-counsel agreements with Local Counsel retained by
plaintiffs in their home states, and that Taylor's co-counsel representations involving plaintiffs and the
Northern claimants in the proposed class were "less profitable" than those involving the Mississippi and
Texas claimants.  Paragraph 11 alleges Taylor had "upstream co-counsel fee arrangements with Pritchard
and Cox" and that Cox would receive 4% of settlements he negotiated.  Paragraph 12 alleges Pritchard
received favorable verdicts in the Mississippi litigation; Mississippi's liberal joinder rules allowed
Pritchard and Taylor to join the claims of many claimants in Mississippi; and Pritchard and Taylor
worked to join the claims of plaintiffs and the proposed class in the Mississippi cases.  Paragraph 13
alleges Taylor and Pritchard had determined that asbestos defendants would settle the Mississippi claims
rather than face trials in Mississippi, and that Taylor and Pritchard did not intend to try plaintiffs' claims
in the Mississippi litigation.

allegedly gave them an "incentive" to deliberately structure the settlements in a geographically

discriminatory manner, in which defendants treated plaintiffs and the Northern claimants

"substantially worse" than the Southern claimants and failed to inform them of the potential

conflicts the fee-splitting/fee-incentive agreements created.  Determining whether these

allegations state a plausible claim is a "context-specific task."  Iqbal, 129 S. Ct. at 1950.  In the

context of this case, these averments cannot be deemed to state a plausible claim for two distinct

reasons, discussed at length in the two sections that follow.  First, Huber I and II *rejected*

plaintiffs' theory that they were "treated substantially worse" than the Southern claimants by

virtue of the defendants' conduct in negotiating "geographically discriminatory" settlements.

Plaintiffs are improperly attempting to piggyback a theory of liability based on previously-

litigated theories of harm and causation that are no longer in the case.  Second, the co-counsel

agreements themselves (which the Court is entitled to consider in deciding this motion) show

that plaintiffs' "fee-splitting"/"fee-incentive" theory is completely false.  No such incentives

existed.

        **2.**        **The Factual Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim Is Contrary To The Mandate And Law Of The Case Established On Appeal.**

            **a.**        **The "Mandate" Rule And "Law-of-the-Case" Doctrine.**

      Plaintiffs' breach of fiduciary duty claim is contrary to the mandate and law of the case

established on appeal, because it is based on the same theory that was rejected twice by the Third

Circuit – i.e., that plaintiffs were harmed by defendants' conduct in negotiating so-called

"geographically discriminatory" settlements.

      "It is axiomatic that on remand for further proceedings after decision by an appellate

court, the trial court must proceed in accordance with the mandate and the law of the case as

established on appeal."  Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 423 (3d Cir.

2008), citing <u>Bankers Trust Co. v. Bethlehem Steel Corp.</u>, 761 F.2d 943, 949 (3d Cir. 1985). The trial court "must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." <u>Id</u>.

The "mandate rule" is nothing more than a specific application of the "law of the case doctrine." <u>Piambino v. Bailey</u>, 757 F.2d 1112, 1120 (11th Cir. 1985). "Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>ACLU v. Mukasey</u>, 534 F.3d 181, 187 (3d Cir. 2008); <u>see also</u> <u>Ogbudimkpa v. Ashcroft</u>, 342 F.3d 207, 210 n.7 (3d Cir. 2003) ("Under the law-of-the-case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case."); <u>Disimone v. Browner</u>, 121 F.3d 1262, 1266 (9th Cir. 1997) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.")

The law-of-the-case doctrine applies to those legal issues that "the court in a prior appeal actually decided, either expressly or by implication . . . ." <u>In re City of Philadelphia Litig.</u>, 158 F.3d 711, 718 (3d Cir. 1998); <u>see also</u> <u>Aramony v. United Way of America</u>, 254 F.3d 403, 410 (2d Cir. 2001) (courts apply the law of the case doctrine "when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication."); <u>Wheeler v. City of Pleasant Grove</u>, 746 F.2d 1437, 1440 (11th Cir. 1984) (the law-of-the-case doctrine "comprehends things *decided by necessary implication* as well as those decided explicitly") (emphasis in original). The doctrine is "designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." <u>City of Philadelphia Litig.</u>, 158 F.3d at 717-18. "Although amendment of pleadings following remand may be permitted, such

10

amendment cannot be inconsistent with the appellate court's mandate." Beverly Hills Bancorp.

v. Hine, 752 F.2d 1334, 1337 (9th Cir. 1984).

**b.       The Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim Is Contrary To The Mandate And Law Of The Case.**

Plaintiffs' breach of fiduciary duty claim is based on the same "discriminatory treatment"

theory that has been rejected by the Third Circuit twice in this case.

In Huber I, the Third Circuit held that plaintiffs had not shown they suffered actual injury

as a result of the conduct of the defendants in negotiating settlements in which plaintiffs and the

Northern claimants received less money than the Southern claimants. Huber v. Taylor, 469 F.3d

67, 73 (3d Cir. 2006) ("We agree with the District Court that, if Plaintiffs must show causation

and actual injury, they lose on both parts of their appeal.") "Plaintiffs . . . failed to present

evidence of actual harm or evidence that Defendants' nondisclosures were the proximate cause

of their harm . . . ." Id. at 72.  In Huber II, the Third Circuit stated that its "implicit affirmance of

the district court's no-actual-harm finding is the law of the case." Huber v. Taylor, 532 F.3d

237, 246 n.5 (3d Cir. 2008).  The Third Circuit noted that plaintiffs "will not be free to re-litigate

the issue of actual harm on a second remand." Id.

The Court in Huber I explicitly and by necessary implication agreed with this Court's

factual findings underpinning the  "no-actual-harm" ruling, including that:

- "actual harm" would require plaintiffs to show that, "'but for' defendants attorneys' conduct, [Plaintiffs] could or would have received more favorable offers." Huber, 469 F.3d at 72;

- the testimony of asbestos company representatives established that, "even though Pennsylvania, Ohio, and Indiana plaintiffs undoubtedly received less money than Mississippi plaintiffs," they still received "higher settlement offers than those normally paid to asbestos claimants from those states because of the leverage these northern claimants gained from being joined with the Mississippi claimants in a Mississippi court." (Id. at 73);

11

- plaintiffs "adduced no evidence they would have obtained more favorable offers from any of the other asbestos defendants with whom they settled their claims." Id.; see also at 85 ("As the majority itself concedes . . . [p]laintiffs cannot demonstrate that, absent defendants' alleged conduct, they would have achieved a better outcome.") (Fuentes, J., dissent).

Despite the Third Circuit's clear directive that plaintiffs "*will not be free to re-litigate the issue of actual harm on a second remand*" (Huber, 532 F.3d at 246 n.5), plaintiffs have attempted to do just that.  The breach of fiduciary duty claim they seek to file is based on the same discredited theory that they were harmed by defendants' conduct in negotiating so-called "discriminatory" settlements.  Allegations of harm and causation pervade the claim.  (See Third Am. Compl. ¶ 14:  in the settlements, "plaintiffs and the proposed class were *treated substantially worse* than" the Southern claimants; defendants "gained millions of dollars *at the expense of plaintiffs* and the proposed class by structuring the settlements in this manner"; ¶ 18: plaintiffs and the proposed class *were victimized by defendants' breaches*; ¶ 27:  defendants failed to inform plaintiffs and the class that the "settlements *discriminated against plaintiffs and the class*." (emphasis added)).

The import of these allegations is that plaintiffs *would* have obtained more favorable offers but for defendants' conduct in structuring the settlements.  But that issue was decided *against* plaintiffs on appeal.  The Third Circuit unequivocally found that defendants' conduct resulted in higher offers for plaintiffs than would normally be the case, and that plaintiffs cannot re-litigate that issue on a second remand.  As a result, plaintiffs' breach of fiduciary duty claim fails to state a claim, and amendment would be futile.

3.   **Taylor's Co-Counsel Agreements with Local Counsel And Southern Co-Counsel, Which The Court May Properly Consider Here, Contradict The "Fee-Splitting"/"Fee-Incentive" Basis Of Plaintiffs' Breach Of Fiduciary Duty Claim.**

a.   **The Court May Properly Consider Taylor's Co-Counsel Agreements.**

This Court is free to consider defendant Taylor's actual co-counsel agreements in the context of this motion to assess whether the agreements contradict plaintiffs' allegations.

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, an exception to the general rule applies to a "document integral to or explicitly relied upon in the complaint." In these circumstances, such a document may be considered "without converting the motion [to dismiss] into one for summary judgment." Id. "[A] court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993), quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

"The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Burlington, 114 F.3d at 1426 (citations omitted). The touchstone is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Id. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." Id. "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by

failing to attach a dispositive document on which it relied." Pension Benefit Guar., 998 F.2d at 1196.[4]

Here, plaintiffs' proposed amended complaint explicitly cites the "co-counsel agreements" between defendant Taylor and Local Counsel in Pennsylvania, Ohio, and Indiana (Third Am. Compl. ¶ 10), as well as the "upstream co-counsel fee arrangements" Taylor had with defendant Pritchard and defendant Cox pursuant to which Cox would receive "4% of all group settlements." (Id. ¶ 11).   The co-counsel agreements, and plaintiffs' representations and inferences about them, are integral to plaintiffs' breach of fiduciary duty claim.   Specifically, plaintiffs allege the following:

- Because Taylor "would have to share fees with Local Counsel, Taylor's co-counsel representations involving plaintiffs and the proposed class were less profitable to Taylor than representations involving his own clients (for example, individuals from Mississippi or Texas)." (Third Am. Compl. ¶ 10).

- Plaintiffs and the rest of the proposed class "were never informed of these fee splitting arrangements" and the "incentives they created for counsel to put their own financial interests ahead of those of plaintiffs and the proposed class." (Id. ¶ 11).

- In the settlements, plaintiffs and the proposed class "were treated substantially worse than similarly situated individuals from Mississippi or Texas.   Defendants structured the settlements in this manner purposefully, contrary to duties owed to plaintiffs and the proposed class, and without the disclosure required by Texas law." (Id. ¶ 14).

- "Defendants gained millions of dollars at the expense of plaintiffs and the proposed class by structuring the settlements in this manner because they received a greater percentage of the settlements for Southerners than of the settlements paid to plaintiffs and the proposed class." (Id.).

---

[4] See also Lewis v. Ford Motor Co., 610 F. Supp. 2d 476, 489 (W.D. Pa. 2009) ("In determining if a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted, the court may consider the complaint, exhibits attached thereto, matters of public record, and undisputably authentic documents if the plaintiff's claims are based on those documents."); Jones v. Lockett, 2009 WL 2232812, at *3-4 (W.D. Pa. July 23, 2009) ("a court need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit", and noting a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss") (attached to Appendix of Unreported Cases at Tab 3).

- "Contrary to duties owed to plaintiffs and the proposed class, defendants put their own financial interests ahead of the interests of their clients." (Id.).

- Defendants failed to inform plaintiffs and members of the proposed class of "potential conflicts with respect to allocation of settlement amounts and defendants' incentive to have amounts allocated to Southerners as opposed to Northerners" and "that settlements discriminated against plaintiffs and the class . . . ." (Id. ¶ 27).

All of the requirements for the "exception" allowing the Court to consider the co-counsel agreements are met here. First, the co-counsel agreements are undisputably authentic. Plaintiffs would not have cited them so prominently in their proposed amended complaint had they doubted their authenticity. See Trump, supra. Second, plaintiffs explicitly refer to the co-counsel agreements and rely on them in asserting their "fee-incentive" theory of breach. See Burlington, supra. Third, plaintiffs cannot be unfairly surprised by the Court's consideration of the co-counsel agreements, since they relied on them in framing their claim. Id. Thus, this Court may properly consider the actual co-counsel agreements in assessing whether plaintiffs' claims concerning them are true, or whether they are false and amendment would be futile.

### b.   Taylor's Co-Counsel Agreements Contradict Plaintiffs' "Fee-Splitting"/"Fee-Incentive" Theory of Breach.

Plaintiffs allege that Taylor's "co-counsel agreements" created an "incentive" for Taylor and the other defendants to structure the settlements in an allegedly harmful, geographically discriminatory manner, treating plaintiffs and the Northern claimants "substantially worse" than the Southern claimants, because defendants received "a greater percentage of the settlements for Southerners than of the settlements paid to plaintiffs" and the Northern claimants. (Third Am. Compl. ¶¶ 10, 11, 14, 27). Those allegations are contradicted by the actual co-counsel agreements Taylor had with each of four Local Counsel for the Northern claimants in Pennsylvania, Ohio, and Indiana, and his co-counsel agreement with his Southern co-counsel for

the Southern claimants (attached hereto as Exhs. A through E), which demonstrate that there was

no such incentive.  The agreements show the following:

- Taylor was contractually entitled to between 95% and 97.5% of the fees from the Northern claimants pursuant to his co-counsel agreements with Local Counsel for cases initiated in Local Counsel's offices and settled or filed outside Pennsylvania, Ohio, and Indiana.  (See Exhs. A-D (co-counsel agreements between Taylor and Local Counsel Colafella, Mitchell, Tavens, and Gikas & Sams, respectively, at paragraph IV)).

- On the other hand, Taylor was contractually obligated to share 50% of the fees with his Southern co-counsel with respect to asbestos personal injury plaintiffs in the Mississippi cases under contract with Pritchard and other co-counsel – i.e., the Southern claimants.  (See Exh. E (Agreement on Fees)).

- Thus, Taylor was contractually entitled to keep between 95% and 97.5% of the fees from the Northern claimants, but was contractually entitled to keep only 50% of the Southern claimants' fees.

The co-counsel fee agreements flatly contradict plaintiffs' allegation that Taylor and the

other defendants received "*a greater percentage of the settlements for Southerners than of the*

*settlements paid to plaintiffs and the proposed class.*"  In fact, the agreements show that

Taylor's arrangements with Local Counsel were more favorable to him, and thus, he did *not* have

an incentive to maximize the settlement amounts received by the Southern claimants.

In addition, plaintiffs allege that defendant Cox would receive "4% of all group

settlements."  (Third Am. Compl. ¶ 11).  Accepting this averment as a "well-pleaded factual

statement" which must be accepted as true, Cox received the same 4% fee for "all group

settlements" he negotiated regardless of the state of residence of the settling claimants.  Thus,

contrary to plaintiffs' allegations, Cox had no incentive to negotiate higher fees based on where

the claimants lived.  Instead, the only reasonable inference to be drawn from plaintiffs' "same-

fee" allegation is that Cox had an incentive to negotiate the highest possible number for all

claimants, irrespective of where they lived.

Further, plaintiffs' "fee-splitting"/"fee-incentive" allegations contain no *facts* regarding Pritchard at all. None of the "fee-incentive" allegations refer to him by name. Instead, plaintiffs use the collective term "defendants," and leave Pritchard to guess at what it is he did that supports the allegations as to him. In addition, the allegations concerning the fee arrangement Taylor had with Cox do not differentiate among the three Cox defendants. It is impossible to know which Cox defendants are alleged to have negotiated settlements and entered into a fee agreement with Taylor. As noted, such collective "group" allegations cannot state a claim, even under the more lenient pre-Twombly Rule 8(a) standard.[5]

## B.      Futility With Respect To Conspiracy To Breach Fiduciary Duty Claim.

Plaintiffs' allegations in Count II of conspiracy to breach fiduciary duty also are deficient. Under Texas law, in addition to proving the underlying breach of fiduciary duty, a plaintiff asserting a claim for conspiracy to breach fiduciary duty must prove the elements of a civil conspiracy claim: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); 12 Tex. Jur. 3d Civil Conspiracy, at § 1.

---

[5] It is anticipated that plaintiffs may contend their false allegations concerning the co-counsel agreements are the "law of the case" based on certain statements in Huber I. The Court in Huber I noted in dicta that plaintiffs had alleged that defendants' "fee arrangements . . . . gave Defendants a larger percentage of Southerners' recoveries than of Northerners'" and that this created an incentive for "Defendants to negotiate settlements that paid more for Southerners' claims than for Northerners.'" Huber, 469 F.3d at 72. These observations are dicta and, as such, cannot be the law of the case. City of Philadelphia Litig., 158 F.3d at 718 (the law-of-the-case doctrine "does not apply to dicta"). Further, such allegations do *not* appear in the Second Amended Complaint, which was the operative complaint at the time Huber I was decided. Plaintiffs mentioned *in passing* for the first time in their brief in Huber I that Pritchard's fee arrangement with Taylor gave him an incentive to favor Mississippi residents. (Appellants' Br. at 41). In any event, the Third Circuit's statement that the fee arrangements gave defendants a larger percentage of Southern recoveries is plainly wrong. Thus, even if the statement was not dictum, it could not constitute the law of the case because it is clearly erroneous. Pardini, 524 F.3d at 426 (the law-of-the-case doctrine does not apply "when the earlier decision was clearly erroneous and would create manifest injustice.").

Count II defines the alleged conspiracy as follows: "Defendants have, through agreement and in combination, acted and continue to act for the common purpose of collecting excessive and improper fees and expenses from funds that belong to plaintiffs and the class, and by violating plaintiffs' rights in violation of Texas law." (Third Am. Compl. ¶ 29). The allegation that defendants agreed to "violat[e] plaintiffs' rights in violation of Texas law" is a pure legal conclusion – an "unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. The allegation concerning "excessive fees and expenses" arguably is also a legal conclusion. Even if deemed to be a mixed legal and factual allegation, it is wholly conclusory. Plaintiffs fail to identify what "excessive fees and expenses" are at issue. Defendants are left to guess whether the "excessive fees" are the same as, or relate to, the fees defendants received as a result of their conduct in allegedly structuring discriminatory settlements, or relate to different, unspecified conduct.[6] The lack of facts concerning the nature of the "excessive fees" leads to a host of speculative questions:  do the excessive fees refer to all fees, or only those associated with "geographically discriminatory" settlements?  In what way are the fees "excessive"?  Do plaintiffs mean to allege defendants charged more than the 40% fee set forth in the retainer agreements plaintiffs had with Local Counsel, or do they mean that the fees are "excessive" in

---

[6] Other references to "excessive" fees in the proposed amended complaint are found in the "class action allegations" at paragraphs 17(f) and19(h), and in paragraph 27. These allegations suggest the "excessive" fees are different from the fees associated with defendants' alleged misconduct in structuring settlements with geographic differences. See, e.g., paragraph 17(f): on behalf of themselves and the proposed class, plaintiffs seek to "[h]ave the Court determine if fees collected by defendants were reasonable under Texas law and the extent to which excessive or improperly obtained fees should be redistributed among and between plaintiffs and the proposed class"; paragraph 27:  "Defendants, among other things, failed to inform plaintiffs and [class] members . . . of . . . potential conflicts with respect to allocation of settlement amounts and defendants' incentive to have amounts allocated to Southerners as opposed to Northerners. Defendants also breached fiduciary duties to plaintiffs and the proposed class by charging and receiving excessive attorneys' fees and expenses without the informed consent and knowledge of their clients." The wording of these paragraphs indicate that the failure to inform plaintiffs and the proposed class about co-counsel fee arrangements and the alleged incentive they created for defendants to structure discriminatory settlements is a different breach from that of charging "excessive fees."

18

relation to the work performed, or on some other basis?  Defendants can only speculate concerning what "fees" and conduct are involved.

Twombly's analysis of the conspiracy claim at issue in that case is particularly pertinent here.  The Court noted the complaint's assertion that defendants "entered into a contract, combination or conspiracy to prevent competitive entry . . . and . . . agreed not to compete with one another" was a legal conclusion.  Twombly, 550 U.S. at 556.  Notably, the Court found that, apart from alleging a seven-year span in which the Sherman Act violations were supposed to have occurred, the pleadings mentioned "no specific time, place or person involved in the alleged conspiracies."  Id. at 565 n.10.  Because the complaint furnished "no clue" as to "when and where the illicit agreement took place," presenting only "conclusory allegations," the complaint failed to give the notice required by Rule 8.  Id.

Like the pleadings in Twombly, the proposed amended pleadings here mention "no specific time [or] place" involved in the alleged conspiracies," and furnish "no clue" as to "when and where the illicit agreement took place."  Under Third Circuit law (including cases pre-dating Twombly), it has long been the rule that claims for civil conspiracy must plead facts, including the time, place, and circumstances surrounding the alleged concerted agreement.  See, e.g., Adams v. Teamsters Local 115, 214 Fed. Appx. 167, 175 (3d Cir. 2007) ("We have held that conclusory allegations of 'concerted action' without allegations of fact that reflect joint action, are insufficient to meet" the Rule 8 requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief"); Lynn v. Christner, 184 Fed. Appx. 180, 184-85 (3d Cir. 2006) ("Under the notice-pleading standard, a complaint must include more than 'conclusory allegations of concerted action'"; this requirement is satisfied where the complaint

"adequately states the conduct, time, place, and persons responsible"), citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).[7]

Likewise, the "overt acts" alleged in paragraph 30 are conclusory statements concerning breaches of various fiduciary duties without any supporting facts. (See Third Am. Compl. ¶ 30: defendants "executed settlements without required disclosures" . . . "intentionally withheld material information relating to these settlements" . . . "unlawfully retained settlement funds". . . "misrepresented such funds . . . as being held in 'trust,'" . . . and "failed to make proper disclosures . . . as required by Texas law"). Defendants are left to guess concerning which executed settlements are at issue (all settlements? only those with geographic differences in settlement amounts? settlements as to which fees were excessive?), and what material information and "disclosures as required by Texas law" were not made.

Moreover, the "overt act" allegations lump all of the defendants together, without identifying which defendant did what, when, where, or in what manner. As noted, even under the more lenient, pre-Twombly pleading standard, these "group" allegations fail to state a claim.

The remaining conspiracy allegations under Count II recite the additional elements of a conspiracy claim under Texas law without factual support or are pure legal conclusions. (See Third Am. Compl. ¶ 31 (defendants "were aware that their conduct was wrongful" (conclusory

---

[7] See also Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) (allegations of conspiracy are measured under the pleading standard in Rule 8(a) and "must also contain supportive factual allegations"); Black & Yates, Inc. v. Mahogany Ass'n, 129 F.2d 227, 231-32 (3d Cir. 1942) ("A general allegation of conspiracy without a statement of facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment"; holding plaintiffs failed to plead facts, as "[n]either the date of the alleged conspiracy nor its attendant circumstances are set forth"). Following Twombly, federal district courts in this Circuit have not hesitated to dismiss conspiracy claims that allege conclusory statements and lack sufficient facts to state a plausible claim. See, e.g., Jones v. Lockett, 2009 WL 2232812, at *9 (W.D. Pa. July 23, 2009); Kemezis v. Matthew, 2008 WL 5191587, at *3 (E.D. Pa. Dec. 10, 2008); Sung Tran v. Delavau, LLC, 2008 WL 2051992, at *1, 10-11 (E.D. Pa. May 13, 2008). (These three cases are attached to Appendix of Unreported Cases at Tabs 3, 4, and 5, respectively.)

statement)); ¶ 32 (defendants' "conduct was intended to, and did, injure plaintiffs and the proposed class") (conclusory statement)), ¶ 33 (defendants "are liable for conspiracy.") (legal conclusion)).

In sum, plaintiffs' proposed conspiracy claim fails to present any supporting facts concerning the existence of an agreement, the object of the conspiracy, the date and attendant circumstances of the conspiracy, and the overt acts in furtherance of the agreement. Like the allegations in <u>Twombly</u>, plaintiffs rely entirely on a "naked assertion of conspiracy," 550 U.S. at 557, and fail to state a claim. Furthermore, because the claim for breach of fiduciary duty fails to state a claim, the conspiracy claim necessarily fails, as well. <u>Massey</u>, 652 S.W.2d at 934.

### C.   Futility With Respect To Aiding and Abetting Breach Of Fiduciary Duty Claim.

Plaintiffs' allegations in Count III of aiding and abetting breach of fiduciary duty against individual defendant Joseph B. Cox, Jr. are even more threadbare. The only allegations in the entire proposed amended complaint that refer to Cox by name are contained in six paragraphs (Third Am. Compl. ¶¶ 7, 8, 11, 35-37). Paragraphs 7 and 8 merely identify his citizenship and ownership of the two defendant law firms that bear his name. Paragraph 11 states that Cox had a co-counsel fee agreement with Taylor to negotiate settlements, for which Cox would receive "4% of all group settlements" he negotiated. (Third Am. Compl. ¶ 11). The fee-agreement allegations impermissibly fail to differentiate among the three Cox defendants. Paragraphs 35-36 allege that Cox "knew that Taylor and Pritchard acted as the plaintiffs' and the proposed class's attorney", and that he "aided and abetted defendants' breaches by knowingly negotiating settlements in a manner that favored the interests of Taylor's and Pritchard's Southern clients over those of plaintiffs and the proposed class." (<u>Id</u>. ¶¶ 35-36). Plaintiffs conclude that Cox is "jointly and severally liable with the other defendants for their breaches of fiduciary duty." (<u>Id</u>. ¶

21

37).  With the exception of these six paragraphs, all of the other averments of the proposed

amended complaint refer collectively to "the defendants," without identifying what Cox did that

allegedly was wrong.

None of these allegations contain *facts* that state a claim for aiding and abetting.  They

are nothing more than legal conclusions and conclusory statements.  Further, under Texas law, a

plaintiff asserting a claim for aiding and abetting breach of fiduciary duty must plead and prove

the underlying breach and that the third party *knowingly* participated in the breach.  Kastner v.

Jenkens & Gilchrist, P.C., 231 S.W.3d 571, 580 (Tex. App.-Dallas 2007) (emphasis added).

Because plaintiffs have not stated a claim for breach of fiduciary duty, they necessarily have

failed to state a claim for aiding and abetting.

II.        **AMENDMENT WOULD BE FUTILE AND PREJUDICIAL WITH RESPECT TO THE PROPOSED RULE 23(b)(2) CLASS ACTION ALLEGATIONS**

        A.        **Plaintiffs Did Not Appeal Judge Schwab's Class Certification Ruling With Respect To Rule 23(b)(2) And Thus Waived The Issue And Relinquished Their Right To Re-Litigate That Basis For Class Certification.**

In their initial class certification motion, filed on August 12, 2002, plaintiffs moved only

for Rule 23(b)(3) certification, seeking a significant sum in compensatory damages ($249,000

per putative class member), disgorgement of fees "in excess of $50 million," and punitive

damages.  (Pls.' Class Cert. Mem. at 9-10, 21).  In their supplemental class certification briefs

filed on March 2, 2004 and April 27, 2004, plaintiffs again sought Rule 23(b)(3) certification,

and additionally sought certification under Rule 23(b)(1) and (b)(2).  (Pls.' Supp. Class Cert.

Mem. at 13, 16-19; Pls' Supp. Class Cert. Reply Mem. at 15).  On appeal in Huber I, plaintiffs

sought only review of Judge Schwab's class certification ruling with respect to Rule 23(b)(1) and

(b)(3), not with respect to Rule 23(b)(2).  (See Appellants' Br. at 53-59 (arguing class should be

certified under Rule 23(b)(1) and (b)(3), but not arguing certification under Rule 23(b)(2)); see

<u>also</u> Appellants' Reply Brief (no discussion of class certification issues)).  Thus, plaintiffs

abandoned and waived their Rule 23(b)(2) claim on appeal and relinquished their right to re-

litigate this basis for certification.[8]

### B.    Plaintiffs' Rule 23(b)(2) Allegations Exceed The Scope Of Remand.

The Third Circuit's remand in <u>Huber I</u> was limited to reconsideration of class

certification under Rule 23(b)(1) and 23(b)(3), not Rule 23(b)(2).  <u>Huber</u>, 469 F.3d at 82-83

(setting forth the standards of Rules 23(a), (b)(1) and (b)(3) in stating that a "proper focus on

fiduciary duty in this case may affect the District Court's view of typicality, adequacy,

predominance, superiority, and inconsistent standards of care as these elements present

themselves in its consideration of class certification").  Because plaintiffs failed to preserve their

Rule 23(b)(2) claim on appeal, and the Third Circuit's remand was limited to Rule 23(b)(1) and

(b)(3), plaintiffs' inclusion of Rule 23(b)(2) class allegations impermissibly exceeds the scope of

remand and would be futile.  Granting leave for plaintiffs to re-plead Rule 23(b)(2) class claims

would also be prejudicial, because it would unfairly allow plaintiffs to re-litigate a basis for class

certification they previously abandoned, and therefore, had waived.

### C.    Defendants Will Be Prejudiced By The Rule 23(b)(2) Sham Allegations.

Defendants will also be prejudiced because the proposed Rule 23(b)(2) amendment is a

thinly-designed stratagem to cloak plaintiffs' demand for money as one primarily for injunctive

relief, in order to avoid the stringent predominance requirements of Rule 23(b)(3).  <u>See</u> <u>Beck v.</u>

---

[8] <u>See</u> <u>United States v. Pelullo</u>, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 182 (3d Cir. 1993) ("to assure consideration of an issue by the court, the appellant must both raise it in [the] Statement of Issues and pursue it in the Argument section of the brief. It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal . . . ") (internal citations omitted); <u>Institute for Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.</u>, 931 F.2d 1002, 1011 (3d Cir. 1991) (same).

Maximus, Inc., 457 F.3d 291, 301 (3d Cir. 2006) (Rule 23(b)(2) applies "when the putative class seeks injunctive or declaratory relief and 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'") (quoting Fed. R. Civ. P. 23(b)(2) advisory committee note).  The proposed Rule 23(b)(2) pleadings purport to fundamentally alter the nature of this seven-and-one-half-year-old case with sham assertions that plaintiffs primarily seek injunctive and declaratory relief.  Plaintiffs contend that the money damages to which they claim entitlement – disgorgement of fees and punitive damages – are "incidental" to the injunctive and declaratory relief sought.  Yet, this case, as plaintiffs testified, has always been about the named plaintiffs' desire to obtain more money.  (See Bidlencsik Dep. Tr. at 102:10-20; 104:16-24; 299:19-24; Deem Dep. Tr. at 242:3-18; Mullins Dep. Tr. at 92:15-93:2; DeFabbo Dep. Tr. at 234:14-19; 235:10-19; Airgood Dep. Tr. at 286:20-287:6; Gishnock Dep. Tr. at 212:23-213:1; 214:14-22; Dinio Dep. Tr. at 249:19-250:3; Huber Dep. Tr. at 337:17-338:5; attached hereto as Exhs. F-M, respectively).

Plaintiffs' request for injunctive and declaratory relief rings hollow.  (See Third Am. Compl. ¶ 17).  They seek a "declaration" that defendants breached their fiduciary duties, even though they do not propose filing a declaratory judgment action. They request an "injunction" preventing defendants from entering into future settlement offers or collecting fees without proper disclosures, even though they allege no facts concerning any "future" settlements.  They seek an order appointing a special master to oversee an accounting of fees and imposing a constructive trust for all past and future fees – which are directly related to the computation of money damages.  All of these claims for relief are window dressing.  The primary relief sought by plaintiffs is a monetary award for disgorgement of attorneys' fees and punitive damages associated with past settlements, not prospective injunctive or declaratory relief.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiffs'

motion for leave to file third amended complaint.


/s/ Howard M. Klein
Howard M. Klein (Pa. I.D. No. 33632)
Judson A. Aaron (Pa. I.D. No. 63794)
Jeannette M. Brian (Pa. I.D. No. 66169)
Conrad O'Brien P.C.
1515 Market Street – 16th Floor
Philadelphia, PA 19102-1916
*Attorneys for Defendants Robert G. Taylor, II,*
*Robert G. Taylor, II, P.C., and R.G. Taylor, II, P.C.*


/s/ Thomas C. DeLorenzo

Thomas C. DeLorenzo, Esquire (I.D. No. 21184)
Ronda K. O'Donnell, Esquire (I.D. No. 47603)
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103-4797
*Attorneys for Defendants Joseph B. Cox, Jr.*
*and Joseph B. Cox, Ltd.*


/s/ Kevin L. Colosimo
Kevin L. Colosimo, Esquire (I.D. No. 80191)
Thorp Reed & Armstrong, LLP
1 Oxford Center
301 Grant Street – 14th Floor
Pittsburgh, PA 15219-1425
*Attorney for The Estate of Robert A. Pritchard*
*and Pritchard Law Firm, PLLC*


/s/ Anita B. Weinstein

Anita B. Weinstein, Esquire (I.D. No. 25654)
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103-3508
*Attorney for Defendant Cox and Cox, LLP*



Dated: September 28, 2009

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Defendants' Joint Memorandum In Opposition To Plaintiffs' Motion For Leave To File Third Amended Complaint to be served upon counsel of record below electronically via CM/ECF Electronic Filing System and by U.S. First Class Mail, postage prepaid, on the date below.

Kevin L. Colosimo, Esquire
Thorp Reed & Armstrong, LLP
One Oxford Circle
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425

Thomas C. DeLorenzo, Esquire
Ronda K. O'Donnell, Esquire
Marshall Dennehey Warner Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103-4797

Anita B. Weinstein, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Alisa N. Carr, Esquire
Leech Tishman Fuscaldo & Lampl
525 William Penn Place, 30th Floor
Pittsburgh, PA 15219

Irving Cohen, Esquire
Cohen Pope, PLLC
156 William Street, Suite 800
New York, NY 10038

Wayne C. Matus, Esquire
Greg T. Lembrich, Esquire
Kenneth A. Newby, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, NY 10036

Jeremy Gaston, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010

/s/ Howard M. Klein
Howard M. Klein

Dated: September 28, 2009