IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD L. HUBER; WILLIAM J.      )
AIRGOOD; ANTHONY DeFABBO;        )
JOHN DINIO; ERNEST GISHNOCK;     )
JOHN BIDLENCSIK; HILMA MULLINS   )
and WILLIAM DEEM, individually and )
on behalf of those similarly situated )
                                 )
            Plaintiffs,           )
                                 )
        v.                        )          Civil Action No. 002-304
                                 )
ROBERT G. TAYLOR, II; ROBERT G.  )          Magistrate Judge Lisa Pupo Lenihan
TAYLOR, P.C.; R.G. TAYLOR II, P.C.; )
ESTATE OF ROBERT A. PRITCHARD;   )          Doc. No. 372
PRITCHARD LAW FIRM, PLLC;        )
JOSEPH B. COX, JR.; JOSEPH B. COX, )
JR. LTD; and COX AND COX, LLP    )
                                 )
            Defendants.           )


## OPINION AND MEMORANDUM ORDER ON MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT


## I. OVERVIEW

This 2002 action involves claims related to Defendants' representation of the eight (8)

above-named Plaintiffs (the "Named Plaintiffs"), and of others similarly situated, in consolidated

individual personal injury actions for exposure to asbestos, in the State Court of Mississippi (the

"Mississippi Asbestos Exposure Consolidated Litigation" or "Mississippi AECL").

After many years of discovery and litigation before several different Judges in this Court, and multiple appeals to the Court of Appeals for the Third Circuit, the Named Plaintiffs' surviving claims are, at bottom, that in representing them in the Mississippi AECL, Defendants

(a) breached their fiduciary duties of candor/disclosure and loyalty under Texas law by (i) covertly allocating settlement funds disproportionately/inequitably in favor of other asbestos litigation clients in other states (to maximize the Defendants' revenue from the cases) and (ii) imposing and receiving excessive expenses; but

(b) caused them no actual harm as they failed to show they would have achieved a better outcome in the underlying actions but for counsel's conduct.[1]

Pending before the Court is a Motion to File a Third Amended Complaint requesting class certification, extensive injunctive relief, accounting, disgorgement of fees, imposition of a constructive trust, and punitive damages.  See Third Amended Complaint at 7.  For the reasons set forth herein, the Court will grant Plaintiffs' Motion in part and deny it in part.  More specifically, they will be granted leave to amend their Complaint in a manner consistent with the law of the case, as discussed below.

## II.  FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' Complaint was filed in February, 2002.  Their last filed, Second Amended, Complaint alleged that the Defendant lawyers and law firms "defrauded" Plaintiffs and other Pennsylvania, Ohio and Indiana clients (the "Northern Clients") in their asbestos exposure litigation in Mississippi by obtaining "colossal, aggregate settlements" and "sacrific[ing] their

---

[1]  Plaintiffs initially asserted claims for fraud, conversion, conspiracy to convert and defraud, professional malpractice, and violation of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law, in addition to claims for breach of fiduciary duty.  Defendants were granted summary judgment on these other claims and Plaintiffs did not appeal.  See discussion *infra*.

clients' rights and interests to the [Defendants'] greed".  <u>See</u> Second Amended Complaint at 2. Named Plaintiffs are former steel mill workers now between 58 and 76 years old, who were exposed to asbestos-containing products during their employment and allege that they have been "diagnosed with an asbestos-related disease." <u>Id</u>.  <u>But compare</u> <u>Huber v. Taylor</u> ("<u>Huber I</u>"), 469 F.3d 67 (3d Cir. 2006) (stating that "[n]one [of the eight Named Plaintiffs] have developed malignant asbestos-related disease" and that "[a]ll the Plaintiffs except Huber are or were smokers"); June 19, 2009 Memorandum Order at 1-2.

In 1995, Defendant Robert Pritchard, an asbestos lawyer practicing in Mississippi, commenced an asbestos personal injury case captioned <u>Cosey v. E.D.Bullard Co.</u> ("<u>Cosey</u>") in Mississippi State Court.  Over the next four years, thousands of "asbestos personal injury plaintiffs were joined in <u>Cosey</u>, along with more than two hundred defendants."[2]  A 1998 trial in <u>Cosey</u> for the cases of twelve (12) Plaintiffs *with malignant asbestosis diseases* resulted in an award of approximately $48.5 million.  As a result, many companies "with potential asbestos liablity [explored] settlement" and in 1999 Pritchard brought a second asbestos personal injury action in Mississippi State Court captioned <u>Rankin v. A-Bex Corp</u> ("<u>Rankin</u>"), "in which the Plaintiffs in this suit were joined."[3]

While the Mississippi cases were proceeding Plaintiffs herein (and other Northern Clients) had "retained counsel in their home states (Local Counsel) to prosecute their asbestos

---

[2]  <u>Huber I</u>, 469 F.3d at 69.

[3]  <u>Id</u>.  <u>See also</u> Third Amended Complaint at 3-4 (noting that Defendant Robert Pritchard, who obtained "favorable verdicts for individuals who had asbestos-related claims" in Mississippi State Court, died in 2006 and was replaced as a Defendant by his Estate).

claims for a 40% retainer fee." <u>Huber I</u>, 469 F.3d at 69-70.[4]   Their Local Counsel had "entered

into co-counsel agreements with [Defendant Taylor], a Texas attorney involved in <u>Cosey</u>," who

agreed to serve as co-counsel for the asbestos clients in exchange for receiving between 95%-

97.5% of Local Counsel's fee if suit were brought outside of the Local Counsel's home state.

<u>See</u> <u>id.</u>  Taylor, in turn, had an "upstream co-counsel agreement" with Pritchard, who had one

with Cox (a North Carolina lawyer).  Under his agreement, Cox negotiated, and received four

(4%) percent of, all group settlements.  <u>See</u>  <u>Huber I</u>, 469 F.3d at 70; June 19, 2009

Memorandum Order at 2.

> Cox negotiated settlements with asbestos defendants W.R. Grace,
> Owens Corning, Fiberboard, and the Center for Claims Resolution
> (CCR), an organization created by 19 asbestos defendants to settle
> asbestos claims.  Under the terms of all the settlements, the payout
> varied both by level of injury and by the home state of the
> claimants.  In all the settlements negotiated by Cox, Northerners
> received payouts that were between 2.5 and 18 times lower than those
> received by Plaintiffs from Mississippi and Texas (Southerners).
> *Northerners who joined in the Mississippi actions nonetheless received
> a larger settlement than similar asbestos plaintiffs from Pennsylvania,
> Ohio, and Indiana usually receive in their home state courts.*

---

[4]  This use of the term "local counsel" is at odds with its traditional meaning.  Nonetheless, as it
has been employed throughout the case history to refer to counsel "local" to plaintiffs, rather
than to the Court of litigation, this Opinion will adhere to that usage.

Huber I, 469 F.3d at 70 (emphasis added).[5]  See also Second Amended Complaint at 16-17, 19-20 (discussing settlement reached in November, 1999, and noting that Defendants have also reached other settlements with other Mississippi AECL Defendants).[6]

When settlements were negotiated, the Northern Clients "received various disclosures . . . made by Local Counsel and . . . a paralegal service associated with Taylor."  Huber I at 71-72. They were provided a release (which was explained orally by the paralegal service), a check and a disbursement sheet.  "The disclosures did not reveal the settlements' material terms or the

---

[5]  The Third Circuit thus acknowledged that regional/geographic (as well as medical history) differences affect personal injury recovery amounts and, accordingly, impact which individuals are truly "similarly situated" for purposes of reasonable personal injury litigation settlement value. See also Huber I, 469 F.3d at 73 (noting District Court's conclusion that Northern Clients received "higher settlement offers than those normally paid to asbestos claimants from those states because of the leverage these northern claimants gained from being joined with Mississippi claimants in a Mississippi court").  Compare Second Amended Complaint (complaining of injury from "geographically discriminatory" settlements); id. 13 (complaining of "discriminatory treatment" in which "defendant lawyers distributed less of the settlement fund to one group of clients solely because of the location of the clients' residence and the place where they were exposed to asbestos"); Third Amended Complaint at 5 ("In the settlements, plaintiffs and the proposed class were treated substantially worse than similarly situated individuals from Mississippi or Texas (the 'Southerners').").  Compare Motion for Leave to File Third Amended Complaint at ¶ 2 (asserting that "primary focus" of Plaintiffs' claims is now "failure to provide disclosures and an accounting . . . as required by Texas law").

[6]  At this point in its factual history, the Court of Appeals observed that "the fee arrangement meant that, all things being equal, co-counsel representations were less profitable to Taylor than representations of direct clients because of the fee splitting [with Local Counsel] involved."  Id. (emphasis added).  Significantly, however, all things do not appear to have been as they were presumed at the time.  For example, contrary to the Court of Appeal's impression at that stage of the litigation, it appears that Taylor's representation of both Northern and non-Northern Mississippi AECL clients was indirect, and that both therefore entailed fee splitting.  See discussion infra.

nature of Defendants' involvement in the cases.  The written disclosures stated that further information about the settlements was available on request."  Id. at 72.

The Named Plaintiffs brought this action in 2002, seeking compensatory damages, disgorgement of attorneys' fees and punitive damages. Following discovery and the filing of two Amended Complaints,[7] Judge Arthur J. Schwab, before whom the case was then pending, denied Plaintiffs' request for class certification and granted Defendants' Motion for Summary Judgment, concluding that "Plaintiffs failed to show actual harm, namely, that Plaintiffs would have achieved a better outcome in the Mississippi litigation but for Defendants' conduct" and that "actual harm was a required element of all of Plaintiffs' claims."  Huber v. Taylor ("Huber II"), 532 F.3d 237, 242-43 (3d Cir. 2008).  See also id. at 246 (discussing District Court's holding that relief was limited to disgorgement of fees, compensatory damages that were likely to be *de minimis* (as "the most a single plaintiff could recover in non-punitive damages was $13,000, representing the amount of fees subject to disgorgement"), and punitive damages).

Plaintiffs appealed only the denial of class certification and grant of summary judgment as to breach of fiduciary duty.[8]  Those aspects of the District Court's Opinion were vacated on

---

[7] As noted *supra* n. 5, the Second Amended Complaint alleges that Defendants allocated less settlement funds to some clients solely because of their residence and place of exposure.  See Second Amended Complaint at 13, 16.  It also alleges that Defendants' expenses charged were "inflated, inappropriate, and in some instances, fictitious."  Id. at 2.

[8] There are two aspects to Defendants' alleged breach of fiduciary duty: (a) breach of a duty to disclose, *e.g.*, Plaintiffs' claim that the Defendants failed to communicate conflict-of-interest and settlement-related information which they had a duty to disclose; and (b) breach of a duty of loyalty, *e.g.* Plaintiffs' claim that the Defendants purposefully undervalued the Northern Clients' cases to maximize their own revenue/profit from the Mississippi AECL.

appeal, as the Third Circuit held that the District Court should have applied Texas law which does not require a showing of actual injury in order to maintain a claim for breach of fiduciary duty *when the remedy sought is disgorgement of attorneys' fees* rather than damages for actual harm.  See Huber I, 469 F.3d at 77 (citing Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999) and rules in accord); id. (explaining that this is so because disloyalty itself "violates the fiduciary relationship and thus impairs the basis for compensation" because "[a]n agent's compensation is not only for specific results but also for loyalty") (quoting Burrow, 997 S.W.2d at 238).

On remand, this Court denied Plaintiffs leave to file a proposed Third Amended Complaint "asserting breach of fiduciary duty claims under Texas law and again seeking" class certification.  It also dismissed Plaintiffs' claims for lack of jurisdiction, concluding that (a) no plaintiff could satisfy the statutory minimum amount in controversy and (b) local counsel were necessary and indispensable parties under Rule 19.  See April 27, 2007 Memorandum Opinion; Huber II, 532 F.3d at 243.  In concluding, on further appeal, that Plaintiffs' subsequent litigation failures did "not oust the court of subject matter jurisdiction",[9] the Third Circuit held that

(a)  "Plaintiffs' original complaint was [not] so patently deficient as to reflect to a legal certainty that no Plaintiff could recover the jurisdictional amount", and "subsequent revelations" did not require dismissal, because: (i) Texas courts have permitted recovery of punitive damages based on an intentional breach of fiduciary duty,[10] (ii) there is no set rule or ratio regarding the

---

[9]  Huber II, 532 F.3d at 246.

[10]  Id. at 246, 244 (citing Brosseau v. Ranzau, 81 S.W.3d 381, 296-97 (Tex. App. 2002) (upholding award of punitive damages, noting that "intentional breach of fiduciary duty is a tort for which a plaintiff may recover punitive damages").

"reasonable proportion" of punitive to actual damages, and (iii) Texas case law suggests that Texas may allow an award of punitive damages supported by relief in the form of disgorgement of fees;[11] and

(b) Rule 19 did not require joinder of Local Counsel.[12]

Following remand, Judge Schwab granted Plaintiffs' Motion for Recusal and denied their request to set aside previous rulings.  The case was reassigned to the undersigned, and the parties consented to jurisdiction.  In the interest of advancing this almost eight (8) year old case, the Court has taken the time to consider, and attempt to provide guidance to counsel regarding its impressions of, the many issues implicated by the pending pleadings.

---

[11] Id. at 245 (citing Russell v. Truitt, 554 S.W.2d 948 (Tex. Civ. App. 1977) (upholding punitives based on forfeiture of agency fees for breach of fiduciary duty), Nabours v. Longview Sav. & Loan Ass'n, 700 S.W. 901, 904 n. 3 (Tex. 1985) (citing cases allowing punitives incident to equitable relief involving return of property); Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W. 2d 5677, 584 (Tex. 1963) (upholding punitives based on return of profits gained in breach of fiduciary duty)); but see id. (citing Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663 (Tex. 1995) (explaining that "actual damages sustained from a tort must be proven before punitive damages are available")).

Cf. Huber II, 532 F.3d at 247, n. 7 ("[A]t least one Texas court has stated that 'malice is not a required element of exemplary damages where there is an intentional breach of fiduciary duty.' Hawthorne v. Gunether, 917 S.W.2d 924, 936 (Tex.App. 1996).  As explained by a number of Texas appellate courts, the question concerning exemplary damages for breach of fiduciary duty is not whether the defendant had an intent to injure but whether the defendant intended to gain an additional benefit for himself.  See, e.g., Edwards v. Holleman, 893 S.W.2d 115, 120 (Tex. App. 1995); Cheek v. Humphreys, 800 S.W.2d 596, 599 (Tex.App. 1990).").

[12] See Huber II, 532 F.3d at 247-50 (noting that (i) "Courts . . . have long recognized that 'it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit'"; (ii) privity was unsupported by record, and analysis would also be premature; and (iii) issue preclusion concerns were too speculative to require joinder).

III. __ANALYSIS__

**A.  Third Amended Complaint's Requests for Injunctive Relief**

The Named Plaintiffs now wish to amend their Complaint not only to restate/reform their breach of fiduciary duty claims in light of prior proceedings/decisions, but also to reframe this action as principally one for injunctive relief.  <u>See generally</u> Third Amended Complaint (seeking to enjoin Defendants "from seeking to bind plaintiffs and other members of the proposed class to 'settlements' of their personal injury asbestos claims without their respective informed consent").  The Court sees no reason to prohibit such amendment.[13]

The Court notes, however, its initial impression that the entertainment of relief sought in the proposed Third Amended Complaint, in the face of other ongoing actions in other Courts, would raise serious prudential concerns.  In particular, the proposed Complaint's request for injunctive relief encompassing, essentially, this Court's governance of the relations between Defendants and their clients in ongoing State Court actions, as under the proposed amendments, could be problematic given the provisions of federal statutes such as the Anti-Injunction Act, 28 U.S.C. § 2283.  For although this Court would not be asked to directly enjoin a State Court, it would be asked to direct the lawyers' conduct of State Court litigation/trial and to enjoin them

---

[13]  More generally, the Court finds Defendants' assertions that *all* amendment should be denied as "futile" owing to the insufficiency of Plaintiffs' allegations unpersuasive, particularly in light of the case history.  As discussed, the surviving claims rest on more than an "unadorned . . . accusation".  Defendants' Joint Memorandum in Support at 5 (quoting <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009)).

from settlement.[14]  It is, therefore, far from clear to this Court that it could appropriately give the injunctive relief which the Third Amended Complaint requests.

In addition, Plaintiffs' modification of this action to one seeking the injunctive relief proposed would certainly alter the interests implicated from those previously considered by the Court of Appeals and, more particularly, would significantly implicate the interests of the State of Mississippi.  As the Court of Appeals observed, Mississippi has elected liberal joinder rules in lieu of class actions,[15] and it has an interest in managing those consolidated cases akin to the interest of other Courts in managing their class actions.[16]  Accordingly, although the Court of Appeals did not previously consider Mississippi in its assessment of the interested forums in itsx

---

[14]  Cf, *e.g.*, In re Prudential Ins. Co. of Amer. Sales Practices Litig., 314 F.3d 99 (3d Cir. 2002) (concluding that injunction "directed at plaintiffs, and not at the state court [had] the effect of staying the state court proceeding and [was] therefore subject to the [Act's] restriction" absent exception); In re Life Investors Ins. Co. of Amer., 589 F.3d 319 (6th Cir. 2009) (holding that District Court's issuance in putative class action of preliminary injunction enjoining insurer from continuing with settlement process in State court was not within exceptions to Anti-Injunction Act); Grider v. Keystone Health Plan Center, Inc., 500 F.3d 322 (3d Cir. 2007) (holding that District Court abused its discretion in issuing preliminary injunction barring counsel's attempted settlements in MDL litigation).

[15]  See Huber I, 469 F.3d at 69 ("Mississippi law does not provide for class actions, but it has liberal joinder rules and a reuputation as a plaintiff-friendly jurisdiction."); see also Third Amended Complaint at 4 ("Liberal joinder rules allowed Pritchard and Taylor to aggregate the claims of many individuals in Mississippi . . . .").

[16]  Indeed, in view of the traditional solicitude of all our sister courts for the fair treatment of all parties, and their diligence regarding the conduct of counsel appearing before them, this Court is at rather a loss to understand why the present action was brought in a Federal Court so far removed from the venue of the underlying Mississippi AECL.

choice of law analysis,[17] amendment of this action from one seeking recovery for breach to one seeking injunctive relief constraining ongoing Mississippi State Court litigation could make consideration of those interests appropriate, if not requisite.[18]

The Court has further concerns regarding the appropriateness of the injunctive relief sought by the Named Plaintiffs in the Third Amended Complaint.  For example, it observes that a client dissatisfied with a terminable-at-will agent, such as legal counsel, typically discharges that agent.  One who believes that legal counsel recommending a negotiated settlement in her personal injury action has withheld information or failed to fairly represent her interests typically declines the proffered settlement and/or terminates that representation.  She does not generally ask the Federal Court to enjoin the agent from acts which she herself has the power to prevent (*e.g.*, the settlement of State Court litigation). Cf. Grider, 500 F.3d at 332 (observing that

---

[17]  See Huber I, 469 F.3d at 76-81 (observing that "it is necessary to examine the law of *all* the relevant jurisdictions", that "District Court only discussed Pennsylvania, Ohio, and Indiana law" but failed to "consider Texas law", and concluding that Texas "has by far the most significant relationship with the action" as between those four states) (emphasis in original); id. at 74 (noting Pennsylvania's use of the significant relationship test of the Restatement (Second) of Conflicts of Laws).

[18]  Cf. Huber I, 469 F.3d at 80 (noting that Texas' "expressed . . . concern" about a "potential conflicted duty of loyalty when class action lawyers negotiate settlements without judicial oversight" is "in marked contrast to Mississippi", whose "courts do not oversee settlements of class actions because that state does not recognize such actions"), id. (concluding that Texas' "interest in regulating the behavior of Texas attorneys" was "particularly pertinent" to case for "breach of fiduciary duty that seek[s] disgorgement as opposed to compensatory damages"); id. at 80 (concluding that as "fiduciary duty at issue arose under" retainer contracts with Local Counsel governed by Texas law, the "duty should be enforced under that law", and while Court of Appeals "would reach the same conclusion without the contractual choice of law provisions" their existence provided additional support).  But cf. id. at 83-84 (Fuentes, J., in dissent) (concluding that choice of law issue had been waived, and that "District Court reasonably could have concluded that Pennsylvania, Ohio, and Indiana have a greater interest in application of their laws than Texas, on ground that plaintiffs are from those three states and that the alleged breach of the duty to disclose occurred in those states").

injunction against settlement may not be issued if adequate remedies at law are available and noting general rule that if a party will have opportunity to raise its objections in proceeding sought to be enjoined, there is deemed to be an "adequate remedy at law").

That said, Plaintiffs will be granted leave to amend their Complaint to request (in language consistent with the law of the case) injunctive relief, if they so choose.

**B.  Third Amended Complaint's "Class Action Allegations"**

This Court has similar reservations regarding the appropriateness of the action framed in the Third Amended Complaint for class certification. <u>See generally</u> Fed. R. Civ. P. 23.  For example, the Named Plaintiffs' claims for injunctive relief now proposed appear to reflect marked divergence of interests between those plaintiffs and the putative class of more than 2,600 other individuals represented by Defendants in the Mississippi AECL.

Although it is not entirely clear from the pleadings whether the Plaintiffs regard themselves as current or former dissatisfied clients of the Defendants,[19] they certainly have effectively terminated their attorney-client relationship, *i.e.*, their relationship of trust is irretrievably broken.  <u>Cf.</u> <u>Huber II</u>, 532 F.3d at 242 (observing that Plaintiffs "were previously represented by Defendants in asbestos personal injury actions in Mississippi state court").

Moreover, Plaintiffs' proposed choice of remedy - to enjoin the consummation of other clients' future settlements - could cause, at a minimum, significant deferral (and perhaps, given

---

[19]  <u>Compare</u> Second Amended Complaint at 3-4 (stating that Defendants "have acted and continue to act" as the Named Plaintiffs' attorneys with respect to their asbestos personal injury claims); Third Amended Complaint at 5 ("Defendants' wrongful acts and their breaches of duties under Texas law continue."), <u>id.</u> at 6 ("Defendants' attempt to withdraw from their representation of plaintiffs was improper and not effective.") <u>with</u> <u>id.</u> at 2 ("Defendants are attorneys who represented plaintiffs . . . .").

related bankruptcy proceedings, permanent loss) of the settlement monies current clients are presumptively content to pursue. [20] Although the Third Amended Complaint asserts that Plaintiffs claims "do not conflict with the interests of any other members of the class because all have suffered from the same wrongful acts and omissions",[21] under the law of the case, those "wrongful acts" did not actually harm the class, whereas it is far from clear that the relief now proposed by Plaintiffs would not result in tangible harm to the putative class members' pecuniary interest.[22]

Nonetheless, as Plaintiffs note, the time to address class certification is when Plaintiffs' Amended Complaint has been filed in final form, and certification is properly requested and

---

[20] This Court and the Court of Appeals have recognized that Defendants have, through their efforts in the Mississippi AECL, been obtaining more settlement monies for the Northern Clients than could be expected to be obtained in those clients' home states. See, e.g., supra at 4-5, n. 5. Plaintiffs now seek to enjoin them from continuing to do so. See Motion for Leave to File Third Amended Complaint at 2.

  Cf. April 27, 2007 Memorandum Opinion at 6 (discussing factual history and noting that, when counsel to Western Pennsylvania Steel Workers Union sought asbestos injury representation, Defendant Taylor advised that because "Pennsylvania offered 'very limited' relief for asbestos claimants . . . [Taylor] would . . . 'try to get [those plaintiffs] involved in the state of Mississippi'").

[21] Third Amended Complaint at 8; Second Amended Complaint at 25 (same).

[22] Cf. generally Huber I, 469 F.3d at 72 (noting that Judge Schwab previously denied Plaintiffs' class certification motion because (1) individual issues about disclosure, reliance, causation, damages and choice of law predominated; (2) a class action would therefore not be most efficient; (3) Plaintiffs were not typical where six of them had not qualified for the CCR settlement offer; and (4) their interests were no longer aligned with other Northern Clients because they were no longer represented by Defendants in asbestos litigation); id. (observing, on remanding, that "[t]he lynchpin of the District Court's decisions on class certification . . . was its determination that all of Plaintiffs' causes of action required a showing of causation and actual injury").

briefed.  See Plaintiffs' Reply Memorandum in Support at 6.  Amendment is not now so clearly

futile as to warrant a denial of leave to include class action allegations in the Complaint.[23]

**C.  Third Amended Complaint's Restatement of Claims for Breach of Fiduciary Duty Under Texas Law**

Counts I through III of the proposed Third Amended Complaint restate claims related to

Defendants' alleged breaches of fiduciary duty.  As discussed above, the Court of Appeals held

that Plaintiffs claims for breach of fiduciary duty *without actual harm* - and related claims for

conspiracy to breach fiduciary duty and aiding and abetting such breach – could proceed under

Texas law.  See *supra* at 6-8.

First, the Court observes that, Defendants' assertions to the contrary notwithstanding,

Plaintiffs' present allegations that Defendants breached their fiduciary duties by (a)

misallocating of settlement amounts based on geographic location *motivated by conflicting fee*

*incentives* and (b) imposing excessive expenses, were each sufficiently within the scope of

Plaintiffs' Second Amended Complaint.  See *supra* nn. 5-7; Huber II, 532 F.3d at 242, 245.[24]

Second, the Court notes that, *as the law of the case is that Plaintiffs suffered no actual*

*harm, they will not be granted leave to amend their Complaint in any manner inconsistent*

---

[23]   Defendants correctly note that Judge Schwab's prior Memorandum Opinion denied class certification under Rule 23(b)(2) as well as (b)(3).  See Defendants' Joint Memorandum in Opposition at 2-3; 22-23.  However, the changed posture of this case, *i.e.*, Plaintiffs' proposed *reframing* of their action as one for equitable relief, would render a fresh consideration of a request under 23(b)(2) appropriate.  The Court also observes, in response to Defendants' objections, that if it were appropriate for this Court to manage the case as a class action, it would be within the Court's power to do so as, *e.g.*, a matter of judicial economy.

[24]   Compare Defendants' Joint Memorandum in Support at 1, 9, 17 & n. 5 (objecting to "new "'fee-splitting'/'fee-incentive' theory of breach" and noting absence of allegation that the geography-differences in settlement allocations *were motivated by conflicting fee interests* in Second Amended Complaint).

*therewith*.[25]  See Huber I, 469 F.3d at 72-73 (noting the District Court's holding that Plaintiffs

had failed to evidence actual harm and, specifically, failed to present evidence from which a

reasonable person could conclude that (1) "'but for' defendant attorneys' conduct, [plaintiffs]

could or would have received more favorable offers", or (2) "defendants['] alleged non-

disclosures proximately caused any plaintiff to accept settlements they would not have otherwise

accepted");[26]  Compare, *e.g.*, Third Amended Complaint at 5 ("Defendants gained millions of

dollars at the expense of plaintiffs and the proposed class by structuring the settlements in this

manner . . . .").  Cf. Defendants' Joint Memorandum at 12 ("Allegations of harm . . . pervade the

claim.").[27]

      Third, and as also discussed above, there are two aspects to these claims, *i.e.*, breach of a

fiduciary duty of loyalty and breach of a fiduciary duty of candor/disclosure.  And even as

---

[25] See, *e.g.* Pardini v. Allegheny Intermed. Unit, 524 F.3d 419, 423 (3d Cir. 2008) ("It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the . . . law of the case as established on appeal.").

[26] See also Huber II, 532 F.3d at 246 ("To be sure, Plaintiffs ultimately failed to prevail on their [causes of action other than breach of fiduciary duty under Texas law].  They also failed to establish actual harm."); id. at n. 5 ("In our prior opinion, we stated: 'If Plaintiffs must show causation and actual injury, they lose on both parts of their appeal.'  Our implicit affirmance of the district court's no-actual –harm finding is the law of the case."); id. ("[R]emand was limited to Plaintiffs' breach of fiduciary duty claims, claims that did not require a showing of actual harm."); April 27, 2007 Memorandum Opinion at 22 (noting that Huber I unanimously "agreed with [the District] Court's finding that plaintiffs could not and had not shown that there were any actual damages that befell them as a result of any of plaintiffs' claims, including the breach of fiduciary duty claims").

[27] Plaintiffs may, in accordance with the holdings of the Court of Appeals, restate their claims for breach of fiduciary duty without actual harm.  Compare Defendants' Joint Memorandum at 9 (asserting that claims are barred by the law of the case rejecting allegations of "'geographically discriminatory' settlements").  But they are cautioned to adhere to the law of the case.  See *infra* at 19.

alleged under Texas law in the Third Amended Complaint, Plaintiffs' claims appear both factually problematic and, to some extent, troublingly unspecific.

### 1. Claim of Settlement Misallocations Owing to Contingency Fee Conflict

### a. Breach of a Duty of Loyalty

As the Court of Appeals has observed, the fiduciary duty of loyalty is inherently a non-delegable duty.  See Huber I, 469 F.3d at 81-82.

This surviving claim has been understood by the Court to be, and remains, that Defendants breached their fiduciary duty of loyalty because they had conflicting contingency fee interests/incentives which led them to undervalue the Northern Clients' cases when allocating the maximized aggregate settlement amount.  See, e.g., Huber I, 469 F.3d at 71 (noting that "Defendants, in settling these cases for Southerners, did not have to share their fees with Local Counsel, as they had to do with Northerners" and that "Plaintiffs allege that the difference in the settlement payouts to Northerners is attributable to [Defendants incentive] to allocate a greater percentage of aggregate settlements to Southerners in order to minimize Local Counsel's percentages").

Markedly to the contrary, however, are Defendants' unrefuted representations, and evidence of record in the form of the co-counsel agreements, that Defendant Taylor's contingency fee interests were aligned *with* (not against) the Northern Clients, *i.e.*, Taylor would have made more money had he allocated more of the aggregated settlement amount to the

Northern Clients (and he was acting against his own pecuniary interests in allocating them less). More particularly, Taylor's contingency fee arrangement for co-counsel representation of Northern Clients entitled him to 95-97.5% of the underlying 40% fee, while his contingency fee arrangement for co-counsel representation of Southern Clients entitled him to 50% of the underlying 40% fee.  <u>See</u> Defendants' Joint Memorandum in Support at 16, and Exhibits A-E.[28] And Defendant Cox's fee of 4% for all group settlements did not vary by the settling claimant's state of residence.  <u>Id.</u>  Thus, the documents of record suggest that Defendants collectively made *less* per $1.00 of settlement monies allocated to clients other than the Northern Clients.[29]  In short, it appears that Defendants would have retained a substantially larger total fee had they equalized settlements for the Northern and Southern Clients, and thus the Defendants' representation contracts appear to belie Plaintiffs' disloyalty theory.[30]

---

[28]  <u>Id.</u>  ("Taylor was contractually obligated to share 50% of the fees with his Souther co-counsel with respect to asbestos personal injury plaintiffs in the Mississippi cases . . ., *i.e.*, the Southern claimants.").  <u>Cf.</u> *supra* at 5, n. 6.

[29]  As Defendants duly note, Plaintiffs' allegations contain no facts whatsoever regarding conflicting financial interests of Defendant Pritchard.  <u>See</u> Defendants' Joint Memorandum in Support at 17.

[30]  The Court properly considered the co-counsel agreements, cited to in Plaintiffs' Complaint, in the context of this Motion.  <u>See generally</u> Defendants' Joint Memorandum in Support at 13-15.  <u>See also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) (discussing consideration of documents "integral to or explicitly relied upon in the complaint").

Plaintiffs' only response, as set forth in their Reply Memorandum Supporting Motion for Leave to File a Third Amended Complaint, is that Defendants' total compensation from the settlement monies allocated to the Northern Clients' cases was less than their compensation from the settlement monies allocated to the other Mississippi AECL Plaintiffs.[31]  But a comparison of total compensation is, of course, wholly irrelevant to an alleged misallocation of settlement funds occasioned by Defendants' contingency fee incentives.  The inquiry pertinent to that allegation is discussed above, and the Court is troubled by Plaintiffs' failure to provide a more appropriate response.[32]

---

[31]  See id. at 4 (providing a two-line table demonstrating, most unremarkably, that a *smaller percentage* multiplied by a *sufficiently larger number* can produce a result greater than a *larger percentage* multiplied by a *smaller number).*  Plaintiffs' assertion that "Defendants would prefer 50% (or in the case of Cox, 4%) of a fee award from a Southern settlement that was ten times greater than a Northern settlement" is, as support of their claim that the Southern settlements were greater because Defendants *were misallocating* settlement monies owing to conflicting financial interests, tautological and nonsensical.

[32]  As discussed in Defendants' Joint Memorandum in Support, the Court's *dicta* in Huber appears to have been premised on erroneous assumptions and/or incomplete factual information regarding the co-counsel fee arrangements.  See, *e.g.*, Huber II, 532 F.3d at 245 ("Plaintiffs allege that the difference in the settlements to Northerners is attributable to [the] incentive of Defendants to allocate a greater percentage of aggregate settlements to Southerners in order to minimize Local Counsel's percentages.  This marginal difference becomes significant in light of the sale of the settlements.  The record contains the approximate or maximum values of eleven of the nineteen settlement agreements negotiated by Defendants.  We calculate these eleven settlement agreement to total some $400 million.  Therefore, on just this portion of the total settlements, Defendants stood to gain up to $100 million (2.5% of $400 million at the expense of Northerners (and Local Counsel) depending on how the settlements were allocated. . . .") (quoting Huber I, 469 F.3d at 70-21); Defendants' Joint Memorandum at 17 n. 5.  See also *supra* n. 6.

-18-

That said, Plaintiffs will be granted leave to amend/restate this claim as one under Texas law, and as one which did not cause any actual harm to Plaintiffs, all in accordance with the decisions of the Court of Appeals.  And Plaintiffs are encouraged to consider addressing the factual underpinnings of Defendant's cogent defense in their pleading.  As to these, and other surviving claims, this Court will consider striking, *sua sponte*, any portions of the newly filed Third Amended Complaint that remain contrary to the law of this case.[33]

### b. **Breach of a Duty to Disclose**

As discussed above, the Named Plaintiffs adequately alleged that Defendants breached their duty to disclose when they, *e.g.*, failed to inform them that the settlement was an aggregation of thousands of claims, that they were allocated less than an equal share, and that Defendants were parties to co-counsel agreements.  The Court of Appeals held that Plaintiffs were permitted to proceed on a claim for breach of fiduciary duty for failure to disclose.[34]  In view of the Third Circuit's holding and discussion, Defendant's contention that permitting such

---

[33] See *supra* text at n. 27.  See generally Fed. R. Civ. P. 12(f) (authorizing Court to *sua sponte* strike immaterial matter contained in pleading).  Cf. Morrison v. YTB Intern., Inc., 2009 WL 2244724 (S.D. Ill. 2009) (noting, in context of amended complaint in putative class action which did not adhere to law of case, that "litigants and their counsel do well not to treat the Court's rulings 'as mere first drafts, subject to revision and reconsideration at a litigant's pleasure'") (citations omitted).

[34] See Huber I, 469 F.3d at 81 (explaining that duty of disclosure of co-counsel is a joint obligation, that performance of that duty is a question of fact for the jury, and that examples of disclosure cited in Defendants' brief (*e.g.*, letter inviting Mississippi AECL clients to "schedule a time to . . . read" the settlement agreement and review list identifying amounts allocated to individual clients under aggregated settlements) did not constitute adequate disclosure).

a claim would be futile is simply untenable, and amendment to reframe Plaintiffs' claims to accurately reflect those left standing is appropriate.[35]

### 2. __Claim of Breach of Fiduciary Duties by Excessive Fees/Expenses__

Plaintiffs proposed Third Amended Complaint asserts, without elaboration, that Defendants "also breached fiduciary duties . . . by charging and receiving excessive attorneys' fees and expenses without the informed consent and knowledge of their clients " and  requests "forfeiture by defendants of fees obtained in violation of duties owed to plaintiffs and the proposed class and an accounting to preclude defendants from retaining excessive fees and expenses from the 'representation' of [same]".  See Third Amended Complaint at 2, 6 and 11.

The Third Circuit has recognized Plaintiff's previously-stated claim for excess expenses, and indicated that it could proceed, but only as one for breach of fiduciary duty without actual injury.  Accordingly, Plaintiffs will be granted leave to reassert that claim, in language consistent

---

[35]  This claim, like that for injunctive relief, impacts the Court's initial impression of the appropriateness of class certification, as it appears to unavoidably raise individual issues.  For example, an individual Plaintiff's degree of sophistication is relevant to the nature and extent of disclosure that should be made by legal counsel.  And it is far from clear that there were no differences from person to person in what disclosures were actually made. Cf. Second Amended Complaint at 2 (describing putative class as "[t]o a large extent . . . unsophisticated [with] little experience with or knowledge of the legal system"); Huber I, 469 F.3d at 72 ("The written disclosures stated that further information about the settlements was available on request.  The record does not state whether any of the Plaintiffs sought to avail themselves of this information."); id. at 73 (discussing District Court's observations that Plaintiffs failed to present evidence that "alleged non-disclosures proximately caused any plaintiff to accept settlements they would not have otherwise accepted. Rather, the evidence shows that plaintiffs either were given or had access to such information but chose to remain unaware, and at best did not recall basic facts surrounding when, where and if they read the documentation presented to them explaining the settlement").

with the law of the case, in their Third Amended Complaint.  See generally Huber II and discussions *supra*; Second Amended Complaint at 21.

Plaintiffs have not, however, previously contended - as they now do in the proposed Third Amended Complaint - that Defendants also imposed "excessive attorneys' fees . . . without the informed consent and knowledge of their clients."  Plaintiffs will be given leeway in the Third Amended Complaint's particularization of what requisite disclosures were withheld in breach of Defendants' fiduciary duty.[36]  However, to the extent Plaintiffs seek to newly challenge the propriety of Defendants' fees, rather than a breach of candor/disclosure of information, this Court cannot permit it and leave to incorporate any such language will be denied.[37]

First, the Court observes that such an assertion would be a new claim based on actual injury and beyond the scope of the Court of Appeals' remand.[38]

---

[36] Cf. Motion for Leave to File Third Amended Complaint at 2 ("Plaintiffs seek to prevent defendants from continuing to . . . collect excessive fees and expenses without proper disclosure.")

[37] See, *e.g.*, Memorandum of Law in Support of Plaintiff's Motion for Leave to File Third Amended Complaint at 2 (asserting that "defendants' 40% contingent fee was grossly 'excessive' . . . [a]bsent any risk associated with a possible lack of success"); Third Amended Complaint at 7 (requesting this Court's determination "if fees collected by defendants were reasonable under Texas law and the extent to which [they] should be redistributed"); Motion for Leave to File Third Amended Complaint at 2 (seeking "appointed Special Master, to determine the amount of fees defendants obtained while in violation of their duties, and the extent to which such fees should be disgorged, either because they were excessive or obtained in violation of owed duties").

[38] See discussions, *supra*.  Cf. Huber I, 469 F.3d at 80 ("Plaintiffs are not in fact litigating the provisions of [their retainer contracts] in this action.")

Second,  unlike other of Plaintiffs' proposed restatements or amendments, this one appears clearly futile.[39]  The underlying contracts for representation - made between Plaintiffs and their Local Counsel[40] - provided for a forty percent (40%) contingency fee, and Plaintiffs make no allegation that they were assessed more than that 40%.  Nor do they make any allegation that Defendants imposed or received charges in excess of those agreed upon in the co-counsel contracts.  Plaintiffs offer no basis for Defendants liability for a breach of fiduciary duty in following the terms of their contracts with other counsel.[41]

Third, as noted above, Plaintiffs' retainer contracts were with their Local Counsel.  It appears, therefore, highly likely that those Counsel would be necessary parties to an action attacking the validity of fees imposed pursuant to those contracts.[42]  Joinder of local counsel would, in turn, defeat this Court's jurisdiction.

---

[39]  See Defendants' Joint Memorandum in Support at 5 (citing standard under Supreme Court's decision in Iqbal, 129 S.Ct. at 1949, that "[a] complaint must contain 'sufficient factual matter' accepted as true to 'state a claim to relief that is plausible on its face'").

[40]  See April 27, 2007 Memorandum Opinion at 2 (noting that no Defendant had a retainer agreement with Plaintiffs, "rather, while Lead Counsel litigated the claims and negotiated the settlements with the asbestos companies, Local Counsel maintained the traditional attorney-client relationship with the plaintiffs, with whom they had executed contingent fee agreements).

[41]  The Court notes that Plaintiffs did not appeal District Court's grant of summary judgment on claims for fraud, conversion, legal malpractice or deceptive trade practices.  See Huber II, 532 F.3d at 243.

[42]  Compare Huber II, 532 F.3d 237 (explaining that it was not necessary to join Local Counsel as joint tortfeasors or co-fiduciaries in the action as then constituted); supra n. 37.

**3.  Scope of Request for Disgorgement**

While Plaintiffs are at liberty to maintain a request for disgorgement in their Third Amended Complaint, the Court notes that it adheres to its previous conclusion that a request for disgorgement of Defendants' fees *on other clients' claims*[43] would be legally unsound.  This Court concurs with Judge Schwab's prior holding that "[d]isgorgement is a restitutionary remedy, and it cannot extend beyond plaintiffs' recovery of the amounts of fees defendants derived directly from the current lawsuit's class members." April 27, 2007 Memorandum Opinion at 24 (citing Morgan v. Gay, 471 F.3d 469, 475 (3d Cir. 2006)); id. at 25 (concluding that "Plaintiffs' Texas authority [*i.e.*, Burrows] does not support their position that disgorgement could reach beyond the legal fees they paid out").[44]

---

[43]  See Plaintiff's Reply Memorandum at 5 (asserting that "Texas law clearly provides for disgorgement of *all* benefits received while in violation of fiduciary duties owed to an individual, including all attorney's fees obtained in representation of *all* clients") (emphasis in original) (citing Burrows v. Arce, 997 S.W.2d 229, 239 (Tex. 1999)); id. ("Plaintiffs seek an order that Defendants disgorge . . . *all* fees received . . . while in breach of duties owed to Plaintiffs . . . .  Defendants' assertion that the claims that Plaintiffs have asserted as instructed by the Third Circuit are somehow improper should be rejected."); Memorandum of Law in Support of Plaintiffs' Motion for Leave to File Third Amended Complaint at 3 (same). But see Third Amended Complaint at 13 (requesting apparently more limited relief of "disgorgement of all fees and expenses obtained by defendants in violation of duties owed to the plaintiffs and the class [of Northern Clients] to be redistributed")

[44]  Compare Huber I, 469 F.3d at 77 (noting that, under Second Amended Complaint, *"Plaintiffs [were] currently seeking* 'disgorgement of Defendants' legal fees collected with respect to the Cosey and Rankin actions. . . .'") (emphasis added) with id at 78 n. 15 (observing that "[d]isgorgement *could entail* up to 39% of [Plaintiffs'] total recovery (Taylor's 97.5% of the 40% contingent fee to Local Counsel), whereas compensatory damages could be *de minimis*")(emphasis added).

### 4. **Claim for Punitive Damages**

The Court is not prepared at this juncture to hold that Plaintiffs' assertion of a claim for punitive damages would be futile, in light of the Court of Appeals' holdings in Huber II. The Court notes, however, that the Third Circuit's discussion of this issue was in the context of a determination of the amount in controversy and, accordingly, applied the highly deferential standard of whether a punitive damages claim would fail to a legal certainty based on the allegations in effect at the time of Plaintiffs' initial filing.

This Court has serious reservations regarding the ultimate viability of such a claim. In particular, the current pleadings and evidence suggest that Defendants' potential liability may ultimately be limited to a "technical" breach of a fiduciary duty to provide further disclosure (*i.e.*, a breach not originating from any bad purpose - such as conflicting pecuniary interests - or disloyalty, and resulting in no actual harm - such as financial/monetary injury).[45]

As discussed *supra* at 8, Texas courts have permitted the recovery of punitive damages based on an intentional breach of fiduciary duty.[46] But there is some doubt as to whether the conduct that may be alleged in support of Plaintiffs' remaining non-injurious claims rises to the

---

[45] Plaintiffs appear cognizant of the evolution of this case, as reflected by its case history. See, *e.g.*, Motion for Leave to File Third Amended Complaint at ¶ 2 ("[T]he primary focus of the new claims [for breach of fiduciary duty] is defendants' failure to provide disclosures and an accounting to plaintiffs and the class, as required by Texas law.").

[46] See Brosseau v. Ranzau, 81 S.W.3d 381, 296-97 (Tex. App. 2002) (noting that "intentional breach of fiduciary duty is a tort for which a plaintiff may recover punitive damages"). Cf. Huber II, 532 F.3d at 247, n. 7 ("As explained by a number of Texas appellate courts, the question concerning exemplary damages for breach of fiduciary duty is . . . whether the defendant intended to gain an additional benefit for himself. See, *e.g.*, Edwards v. Holleman, 893 S.W.2d 115, 120 (Tex. App. 1995); Cheek v. Humphreys, 800 S.W.2d 596, 599 (Tex.App. 1990).").

-24-

level of culpability necessary to support a punitive award.[47]   And there is some doubt as to whether Texas law would permit an award of punitive damages in the absence of actual injury. Compare Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663 (Tex. 1995) (explaining that "actual damages sustained from a tort must be proven before punitive damages are available") (cited in Huber II) with Huber II , 532 F.3d at 245 (discussing cases allowing punitive damages predicated on restitutionary remedy in fiduciary cases).  At bottom, Defendants' assertion of futility in response to Plaintiffs' Motion for Leave to Amend is not the procedural posture in which this Court should resolve these questions of Texas law.  Accordingly, Plaintiffs will be permitted to include an appropriately worded request for punitive damages in their Third Amended Complaint.

## IV.  ORDER

        AND NOW, this 25th day of January, 2010, upon review of the pleadings and briefs of record, it is hereby ordered that Plaintiff's Motion for Leave to File a Third Amended Complaint is granted in part and denied in part.  More specifically, Plaintiffs are granted leave to file a revised Third Amended Complaint, comporting with the law of the case and the limitations detailed in this Opinion, within twenty (20) days from the date hereof.

                                                        _____
                                                        Lisa Pupo Lenihan
                                                        United States Magistrate Judge

---

[47]  See, e.g., Huber II, 532 F.3d 237 (observing that punitive damage claim at time of initial filing was supported by counts of fraud which were subsequently dismissed).