IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD L. HUBER; WILLIAM J. )
AIRGOOD; ANTHONY DeFABBO; )
JOHN DINIO; ERNEST GISHNOCK; )
JOHN BIDLENCSIK; HILMA MULLINS )
and WILLIAM DEEM, individually and )
on behalf of those similarly situated )
 )
   Plaintiffs, )
 )
  v. )  Civil Action No. 002-304
 )
ROBERT G. TAYLOR, II; ROBERT G. )  Chief Magistrate Judge Lisa Pupo Lenihan
TAYLOR, P.C.; R.G. TAYLOR II, P.C.; )  ECF Nos. 401, 407
ESTATE OF ROBERT A. PRITCHARD; )
PRITCHARD LAW FIRM, PLLC; )
JOSEPH B. COX, JR.; JOSEPH B. COX, )
JR. LTD; and COX AND COX, LLP )
 )
   Defendants. )

**OPINION ON MOTIONS**

**FOR CLASS CERTIFICATION AND PARTIAL SUMMARY JUDGMENT**

**I. HISTORY AND SCOPE OF CLAIM**

   As noted in this Court's last Opinion, the claims presently remaining before this Court in

this 2002 action relate to Defendants' representation of the eight (8) above-named Plaintiffs (the

"Named Plaintiffs"), and assertedly of others similarly situated, in consolidated individual

personal injury actions for exposure to asbestos, in the State Court of Mississippi (the "Mississippi

Asbestos Exposure Consolidated Litigation" or "Mississippi AECL").   More specifically,

"Plaintiffs maintain, under the express law of the case as set forth by the Court of Appeals, a claim

for breach of fiduciary duty under Texas law, by which they may be entitled, *despite having*

*incurred no actual injury*, to disgorgement of all or some portion of the attorney fees paid by the

Named Plaintiffs (or members of their putative class, if such class were to be certified). . . . And

with evidence sufficient to raise a question of intentional breach of fiduciary duty, Plaintiffs might

also be entitled to punitive damages under Texas law."   See Opinion and Memorandum Order on

Motion to Strike and Dismiss at 3-4 (emphasis added); id. at 2 n. 1 (detailing Circuit Court's

finding of no actual harm).[1]   Plaintiffs' claims turn on allegations that Defendants breached their

Texas law fiduciary duty (by failing to adequately disclose material information, including, *e.g.*,

co-counsel arrangements and/or settlement information, to Mississippi AECL participants residing

in Pennsylvania, Ohio and Indiana (the "Northern Clients"); allocating settlement funds

disproportionately owing to conflicting fee incentives; and/or failing a duty of candor/disclosure

by imposing excessive charges).   See id. at 3; see also id. at 6 (explaining that a challenge to

propriety of fees/expenses, rather than breach of disclosure of information related to them, would

be precluded by, among other reasons, the law of the case/scope of the Circuit's remand).

---

[1] January 25, 2010 Opinion and Memorandum Order on Motion for Leave to File Third Amended
Complaint at 13, n. 20 ("This Court and the Court of Appeals have recognized that Defendants
have, through their efforts in the Mississippi AECL, been obtaining more settlement monies for
Northern Clients than could be expected to be obtained in those clients' home states.").

Presently pending is Plaintiff's Motion for Class Certification, ECF No. 401, which, for reasons (a) among those well-briefed by Defendants and (b) set forth below, will be denied.[2]

Also pending is Defendants' Motion for Partial Summary Judgment, ECF No. 407, requesting dismissal of claims based on alleged "conflicting fee incentives" and "retaliatory and ineffective withdrawals of representation".  This Motion will, on the evidence of record, be granted.

## II.   <u>ANALYSIS AS TO CLASS CERTIFICATION</u>

### A.   Plaintiffs' Action, as Set Forth in Their Third Amended Complaint, is Predominantly One for Monetary Damages Under Texas Statutory Law and Not One for Injunctive or Declaratory Relief

As a preliminary matter, the Court is in accord with Defendants' observations regarding the restriction of certification under Rules 23(b)(1) or 23(b)(2) to those actions seeking

---

[2]  The Court had previously communicated its impression that qualification of this action for class certification appeared problematic given considerations of, *e.g.*, typicality; adequacy of representation**;** and individual issues related to disclosure**.** See January 25, 2010 Opinion at 12-14, 20 n. 35. <u>See also</u> <u>Huber I</u>, 469 F.3d at 72 (noting that J. Schwab denied Plaintiffs' class certification motion on basis of individual issues (including disclosure, reliance, causation, damages and choice of law), absence of typicality and absence of adequacy of representation where Plaintiffs were no longer represented by Defendants); <u>id.</u> (noting on remand that the "lynchpin of the District Court's decisions on class certification . . was its determination that all of Plaintiffs' causes of action required a showing of causation and actual injury" and Circuit Court concluded actual injury was not requisite to Texas breach of fiduciary duty claim for disgorgement); Defendants' Joint Memorandum in Opposition to Plaintiff's Motion for Class Certification at 36 ("Plaintiff's non-disclosure claims are the same in all material respects as those asserted in their Second Amended Complaint, which were the subject of Judge Schwab's previous ruling denying class certification.").  The Court's present conclusion is in accordance with prior assessments of, *e.g.*, individual issues.

predominantly injunctive or declaratory relief.   See Barnes v. American Tobacco Co., 161 F.3d 127, 142 (3d Cir.1998) ("Subsection (b)(2) class actions are limited to those class actions seeking primarily injunctive or corresponding declaratory relief" and (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages."); Wal-Mart Stores, Inc. v. Dukes, 2011 WL 2437013, *12 (U.S. June 20, 2011) (holding that claims for monetary relief may not be certified under 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief");[3] Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 318 (5th Cir. 2007) (explaining that focus on monetary damages set class apart from 23(b)(1) class actions, where principal goal is injunctive relief).   See also generally 5 Moore's Federal Practice Section 23.41 & .42 (explaining that exception to certification under (b)(1) or (b)(2) for predominantly injunctive or declaratory relief, with monetary relief being "merely incidental", is under a "limited fund" theory);[4] Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)(determining that, even in hybrid case requesting injunctive/declaratory and monetary relief, "incidental" monetary relief "flow[s] directly from liability to the class as a whole" and should be that to which class members would then be automatically entitled, not dependent on "subjective

---

[3] See also Barabin v. Aramark Corp., 2003 WL 355417, *1 (3d Cir. Jan. 24, 2003) (explaining that, "where parties seek monetary relief, a court may only certify a [(b)(2)] class if the damages claim is incidental to the primary claim for injunctive or declaratory relief."); Allen v. Holiday Universal, 249 F.R.D. 166, 189 (E.D. Pa. 2008) (noting that certification is inappropriate where "many putative class members have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages").

[4] As noted infra at n. 16, this case does not meet the "limited fund" exception under Rule 23(b)(1)(B).

differences of each class member's claims" and not requiring "additional hearing to resolve the disparate merits of each individual's case").

In this case, Plaintiffs' Third Amended Complaint *as filed*, purposefully abandons claims for injunctive relief and, as Defendants observe, focuses on claims for disgorgement of fees and punitive damages for alleged past misconduct under Texas statutory law.   See Defendants' Joint Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ("Defendants' Joint Opposition") at 2.[5]   Plaintiffs' requests for disgorgement of fees and punitive damages do not meet the requisite standard.   See, *e.g.*, Wal-Mart, 2011 WL 2437013 at *14 ("Rule 23(b)(2) does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments."); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d 894, 897 (7th Cir. 1999); see also Defendants' Joint Opposition at 2, 48 (noting that Plaintiffs characterize their case as seeking "the equitable remedies of disgorgement and an accounting, and punitive damages"); id. at 51 & n. 45 (providing citations to earlier Circuit Court cases holding that injunctive or declaratory relief, for purposes of Rule 23(b), are distinct/specific forms of relief and not an "umbrella term' encompassing, e.g., restitution or disgorgement).   Nor is Plaintiffs' request for a retrospective declaration that Defendants violated fiduciary duties sufficient for purposes of the injunctive/declaratory relief requirement of (b)(1) and/or (b)(2).   See Defendants' Joint Opposition at 48-49 (citing Third

---

[5]   Cf. generally January 25, 2010 Memorandum Opinion at 9-14 (discussing problematic nature of/prudential concerns raised by requests for injunctive relief in Third Amended Complaint as initially proposed).   See Defendants' Joint Opposition at 47-49 (discussing Plaintiffs' modifications to Third Amended Complaint as subsequently filed).

Amended Complaint request for order "declaring that Defendants violated their fiduciary duties");

Defendants' Joint Surreply in Further Opposition to Motion for Class Certification at 1-3 (noting

Complaint's request for an order requiring defendants to "disclose potential and actual conflicts"

and "terms of all settlements or pending settlements").[6]  See also id. at 50-52 & n. 43 (providing

extensive case citations illustrative of the well-established principle that injunctive or declaratory

relief cases address present/future, versus past, harms).  Cf. Matin v. Keitel, 205 Fed. Appx. 925,

928 (3d Cir. 2006) (affirming dismissal of declaratory judgment action seeking "merely a

declaration that defendants violated . . . rights in the past").

In addition, as discussed below, Plaintiffs also fail certification under provisions of Rule

23(b) for want of predominance or cohesiveness.

## B.   Plaintiffs Fail to Satisfy Either "Predominance" or "Cohesiveness", as Required for Their Requested Class Certification Under Rule 23(b)

Plaintiffs assert, in their related briefings, that the individual issues inherent in this action

and previously noted by this Court, including specifically the individual issues of disclosure, (a)

constitute not an element of their claim, but solely an affirmative defense, and (b) are irrelevant to

class certification.   They err on both counts.   First, Plaintiffs' claim has been, and remains under

---

[6] Compare Defendants' Joint Opposition at 3, 34 (noting that only ongoing activity on behalf of the putative class as a group is under the jurisdiction of the Bankruptcy Courts and there are no pending settlement negotiations with solvent asbestos companies); Defendants' Joint Surreply at 2-3 (noting absence of any factual circumstance to which prospective injunctive relief could apply).

the law of the case, essentially that Defendants breached a Texas law fiduciary duty via a failure to adequately disclose.   W*hat was and was not* disclosed is therefore obviously and necessarily a part of Plaintiffs' proof of that breach.   That is, the information communicated to the Northern Clients (by Defendants, the client's local counsel, or their representatives) goes to an actual element of the claim and is part of Plaintiffs' *prima facie* case.   Second, Plaintiffs' blanket proposition to the contrary notwithstanding, affirmative defenses *are* relevant to class certification.[7]   And while differences in disclosure *may* not be relevant to the requirement of "typicality" under Rule 23(a) - which is where Plaintiffs essentially attempt to pigeonhole them in their briefing - they are clearly relevant to class determination on the whole because they directly relate to the requisite consideration of "predominance" under Rule 23(b)(3), or its functional equivalent, "cohesiveness", under Rule 23(b)(2).

<u>The Adequacy of Defendants' Disclosures is an Element of Plaintiffs' Claim</u>

As detailed in Defendants' pleadings, the extensive record in this nine-year-old case reflects individual questions regarding what disclosures were *necessary to* (*i.e.*, what were reasonable and adequate given, *e.g.*, the client's prior knowledge, level of sophistication and understanding, and degree of interest/inquiry) and what disclosures were *made to* each client.[8]

---

[7]  <u>See generally, *e.g.*</u>, <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 135-37 (3d Cir. 1998) (affirming district court's finding that affirmative defenses raised individual issues precluding certification); Defendants' Joint Opposition at 44.

[8]  <u>See</u> January 25, 2010 Memorandum Opinion at 20 n. 35 (noting that "an individual Plaintiff's degree of sophistication is relevant to the nature and extent of disclosure that should be made by legal counsel"); <u>id.</u> (citing <u>Huber I</u>, 469 F.3d at 723 (discussing observation that "the evidence

Again, Plaintiffs' claim for breach of fiduciary duty under Texas law turns largely on Defendants'

allegedly inadequate disclosures of information.[9]   And it is not the case that identical disclosures

were either required or made.   Plaintiff s have made no such showing, and, to the contrary, the

record indicates significant differences as to both (a) individual client's prior knowledge and

inquiry, and (b) the information provided initially and in response to client questions by the

various representatives (including clients' local counsel and third-party information-providers,

whose dialogs with clients – significant evidence indicates – were not scripted or standardized).[10]

---

shows that plaintiffs either were given or had access to . . . information but chose to remain
unaware, and at best did not recall basic facts surrounding when, where and if they read the
documentation presented to them explaining the settlement").

[9]  See generally Texas Disciplinary Rule of Professional Conduct 1.03(b) and Comt. 1;
Restatement (Third) of the Law Governing Lawyers, Section 20 (explaining standard of
reasonableness as dependent on factors including importance of information, extent of previous
disclosure and consultation, and client's sophistication and interest).   See also Burrow v. Arce,
997 S.W.2d 229, 241-43 (Tex. 1999) (discussing factors, including e.g. willfulness and effect on
value of lawyer's work for the client or other harm, in analysis of appropriateness of any
disgorgement award and amount).   Compare Huber II, 532 F.3d at 246 & n.5 (Circuit Court's
reiteration that Plaintiffs failed to present evidence from which a reasonable person could conclude
that they suffered any actual harm); April 27, 2007 Memorandum Opinion at 22.

[10]  See, e.g., Defendants' Joint Opposition at 9-12 (discussing communications of settlement
information by clients' local counsel and paralegals from Parapro litigation management firm,
with extensive citations to record); id. at 13 (explaining that putative class members did not all
qualify for/receive offers from all the same asbestos defendants); id. at 15 (observing, with
citations to record, that oral communications were made at meetings with local counsel and
paralegals in Pennsylvania, Ohio, and Indiana, and that they held additional meetings with clients);
16 (providing citations to record regarding individualization of information provided in response
to client questions in dialog with a representative); id. at 17 (noting that local counsel made regular
visits to Union Hall to answer individual client's questions); id. at 17-18 (noting, with extensive
record citations, that oral communications were tailored to levels of interest, comprehension, and
questions, and presentations made differed by presenters and over period of several years); id. at

Even assuming that certain disclosures, standing alone, may be inadequate across the board (*i.e.*, to every client, however situated), where, as here, the record strongly reflects differences in the particulars and totality of statements/disclosures made by various counsel and representatives to individual clients , the adequacy of each set of disclosures must be determined on a case-by-case basis.[11]   And in the presence of differing client circumstances and differing disclosures, a declaration that Defendants breached a fiduciary duty toward one client would not conflict with a declaration that they satisfied that duty toward another. In sum, the case presents necessarily individual questions foundational to an element of Plaintiffs' claim that Defendants breached their fiduciary duty.[12]

---

19 (citing paralegals' testimony that document reviews were not scripted and were prepared/presented with own notations/words of explanation); id. at 21 (discussing modifications to documents during course of litigation and paralegal's notations and modification of information communicated in response); id. at 30 (noting that Plaintiff Huber inquired whether medical testing would be deducted from settlement funds received); id. at 39 (citing to specific related factual findings of Judge Schwab's May 3, 2004 Memorandum Opinion).   See also Defendants' Joint Surreply at 10-11 (observing that under governing law, performance of duty to disclose is evaluated under standard of reasonableness under the circumstances, including those of the client).

[11]   In appearing to assert that insufficient disclosure is the "law of the case", Plaintiffs read more than warranted into the Third Circuit's observation that the examples of disclosures presented in the pleadings at the time of an appeal did not of themselves constitute adequate disclosure. Compare Plaintiffs' Reply Memorandum at 4-6 with Defendants' Joint Surreply at 12-13; Huber I, 469 F.3d 67, 81-82 (3d Cir. 2006) (observing that documents before it "alone" did not constitute adequate disclosure and that "additional facts in the record or that may be adduced at trial could support a finding of adequate disclosure").   This Court has previously directed Plaintiffs' attention to the actual language of the Circuit's decision.

[12]   See Defendants' Joint Surreply at 8-9 (distinguishing ERISA, securities and antitrust cases relied upon by Plaintiffs); id. at 11 (explaining that Plaintiffs' cases do not support their "blanket rule" that breach of fiduciary duty actions do not encompass evidence of plaintiff's

<u>Individual Issues Regarding Disclosures Preclude Certification under (b)(2) or (b)(3)</u>

In addition, the differences in (a) disclosures and (b) individual factors assessing the reasonability thereof foreclose certification of a class under either the "common questions predominate" requirement of Rule 23(b)(3) or its functional equivalent, the "cohesiveness" requirement of Rule 23(b)(2).[13]

Class action proponents seeking Rule 23(b)(3) certification must present some creditable demonstration that class-wide issues "predominate", *i.e.*, that the issues may primarily be addressed through generalized – as opposed to individualized – proof.   A class action will not provide significant savings of time and effort, and is not maintainable on predominance grounds, where Plaintiffs must introduce substantial individualized proof (*i.e.*, evidence that varies from member to member) to establish their claims.   <u>See generally</u> <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591 (1997) (noting that predominance inquiry "trains on the legal or factual questions that qualify each class member's claim").[14]   Even assuming Plaintiffs were not bound by their

---

conduct/understanding/sophistication/interest).

[13] This case law incorporates (b)(3)'s predominance requirement under the judge-made concept of cohesiveness for (b)(2).   <u>See, e.g.</u>, <u>Barnes v. Amer. Tobacco Co.</u>, 161 F.3d 127, 143 (3d Cir. 1998) (noting that "it is well established that the class claims [of a (b)(2) class action] must be cohesive" and the district court may deny certification "in the presence of disparate factual circumstances"); <u>see also</u> discussion *infra*.

[14] <u>Cf.</u> <u>Wal-Mart</u>, 2011 WL 2437013 at *7 (holding, in assessing satisfaction of Rule 23(a)(2)'s threshold requirement of commonality, that "[w]hat matters . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation").

disavowment of an intent to seek certification under (b)(3),[15] common questions do not predominate where, as here, the evidence indicates varying written and oral disclosures made over several years in different states, and in accordance with individual Mississippi AECL plaintiffs' questions/concerns.

Similarly, Courts in this Circuit analyze certification under (b)(2) under the rubric of "cohesiveness", which effectively incorporates the predominance requirement.   See Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 248 (1975).   "Indeed, a (b)(2) class may require more cohesiveness than a (b)(3) . . . because unnamed members are bound by the action" with no opportunity to opt out."   Barnes, 161 F.3d at 143 (further observing that if (b)(2) certification were authorized in presence of individual liability issues "little value would be gained in proceeding").   See also, *e.g,* Gaston v. Exelon Corp., 247 F.R.D. 75, 87-88 (E.D. Pa. 2007) (denying (b)(2) certification where individual determinations would create "an unwieldy miasma rife with mini-trials").[16]

---

[15]  See Plaintiffs' Memorandum in Support of Motion for Class Certification at 30 n. 5.

[16]  The Court also observes that disgorgement would not, in this case "flow directly from Defendants' liability to the class as a whole" (as it would in an ERISA Plan/limited fund case, which this is not); rather, disgorgement in this case is an individual right of each wronged client. Compare Plaintiff's Memorandum in Support at 27 with Defendants' Joint Opposition at 2; 56-57 (observing that fees at issue are not a unitary asset to which each putative class member has a proportionate interest; rather, each member has an interest solely in the fees s/he paid, and entitlement to disgorgement will depend on individual proof/fact-finding under applicable Texas law); Defendants' Joint Surreply at 4-6.

It further observes that, given that the law of the case is that Plaintiffs incurred no actual damages, and given the parameters for an award of punitive damages under applicable Texas law,

Accordingly, Plaintiffs' Motion for Class Certification will be denied.[17]

## C.   Plaintiffs Also Fail to Satisfy Adequacy of Representation, as Required for Class Certification Under Rule 23(a)

As another, independent grounds for denial of class certification, the Court observes that

Plaintiffs fail to meet the requirement of adequacy of representation under Rule 23(a). [18]

---

there is no reasonable likelihood of a punitive award to an individual Plaintiff precluding Defendants' ability to pay actual damages to others.   See January 25, 2010 Memorandum Opinion at 24. Compare Plaintiffs' Memorandum in Support at 25 with Defendants' Joint Surreply at 4-6, n. 6.

[17]   See generally   De Lage Landen Fm. Services, Inc., 2010 WL 3322703, **20-21 (E.D. Pa. Aug. 20, 2010) (denying certification where customers were provided "varied, non-standardized oral communications" which sometimes differed from written materials, were not scripted, and "depended on the questions [customers] asked and the responses provided" in group presentations); Liberty Mut. Ins. Co. v. Tribco Const. Co., 185 F.R.D. 533 (N.D. Ill. 1999) (finding failure to meet predominance burden despite existence of standard manuals where claim relied on oral representations); Endres v. Wells Fargo Bank, 2008 WL 344204, **10-12 (N.D. Cal. Feb. 6, 2008) (denying certification where evidence necessitated individual inquiry into disclosures); In re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 221 (W.D. Mich. 1998) (concluding that varied oral presentations and what representations were made required individualized factual development).

[18]   The four prerequisites to a class action, under Federal Rule of Civil Procedure 23(a), are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

As a shorthand, courts regularly refer to the prerequisites as numerosity, commonality, typicality, and adequacy of representation. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir.2004); Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (3d Cir.1996), aff'd sub

Adequacy of representation generally considers whether "the named plaintiffs' interests are sufficiently aligned with those of the absentee proposed class members.  See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995).  See also Baby Neal, 43 F.3d at 55 ("Adequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class. . . ..").

In this case, Plaintiffs who have repudiated their attorney-client relationship with Defendants seek to represent a class consisting of a large number of presumptively satisfied clients who have (1) according to the record and case history, received more money through their participation in the Mississippi AECL than they would otherwise have received for their claims,[19] and (2) ongoing administrative claims being processed.   As this Court has previously suggested, it seems a rather dubious proposition that clients who believe counsel have breached fiduciary duties and should be made to, e.g., disgorge their fees, can properly represent presumptively satisfied clients. [20]  It also appears questionable, at best, that a client could make a breach of fiduciary claim against counsel, obtain disgorgement of that counsel's fees, and then compel that lawyer to continue representative work on behalf of such client.   There is, therefore, a conflict of

---

nom. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting that adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent").

[19] See supra n. 1.

[20] See generally, e.g., Defendants' Joint Opposition at 31-32 (providing record citations to testimony of putative class member who believed his questions were answered, documents and settlements were explained, clients were fully informed and members of his union were pleased with representation).

interests between (a) those clients who elect suit for disgorgement and effective termination of representation and (b) those clients who are satisfied with, and do not wish to dispense with, the lawyer's services. <u>See</u> Defendants' Joint Opposition at 4; <u>cf. generally</u>, January 25, 2010 Memorandum Opinion at 11.   As noted above, the *sine qua non* of adequate representation in a class action is the absence of a conflicting interest between the putative representatives and the class.   Here, the Plaintiffs, due to their repudiation of the relationship, have no interest in the ongoing services of Defendants, unlike the class.   The resulting conflict is palpably demonstrated by the fact that Plaintiffs filed papers in this Court seeking to enjoin Defendants from consummating settlements on behalf of members of the class notwithstanding that such injunctions would prevent or at least delay the securing of monies other class members might be glad to have in hand.   <u>See</u> January 25, 2010 Opinion and Memorandum Order.


**D.   Typicality Remains Problematic, But is Not a Basis for Denial of Certification**

Finally, this Court observes, but does not base its denial of class certification upon, its continuing belief that Plaintiffs' effective termination of the client-counsel relationship with Defendants affects consideration of Rule 23(a)'s requirement of typicality as well. "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." <u>Barnes</u>, 161 F.3d at 141.   <u>See generally</u> May 3, 2004 Memorandum Opinion of Judge Schwab at 24 (observing that "the named Plaintiffs are no longer represented by defendant Taylor

or Local Counsel . . . because Taylor could no longer represent them [in light of complaint allegations]); January 25, 2010 Opinion at 12 (observing that named Plaintiffs had "effectively terminated their attorney-client relationship").

III.   **ANALYSIS AS TO PARTIAL SUMMARY JUDGMENT**

Defendants' Motion for Partial Summary Judgment, ECF No. 407, requests dismissal of claims for breach of duty under Texas law based on alleged "conflicting fee incentives" and "retaliatory and ineffective withdrawals of representation".   As a preliminary matter, the Court notes the applicable standard:   "Once the moving party points to evidence demonstrating that no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." See Azur v. Chase Bank USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010).   See also generally Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986); Defendants' Joint Reply in Further Support of Motion for Summary Judgment at 2, n. 3 (chronicling 2008 and 2010 amendments to Rule 56 as they relate to partial summary judgment on, *e.g.*, an "issue within a claim" that may be eliminated from litigation in the absence of the non-movant's establishment of a material fact question, or a "part of each claim or defense"); 11 Moore's Federal Practice (3d ed.) Section 56.401[1].

**A.   Plaintiffs Have Failed to Adduce Evidence Sufficient to Maintain a Claim for Breach of Fiduciary Duty of Loyalty Under Texas Law Premised on Conflicting Fee Incentives**

Following review of the evidentiary record, this Court observed in the course of its January 25, 2010 Opinion that Plaintiffs' "conflicting fee incentives" allegation appeared "factually

problematic" in light of the provisions of the co-counsel agreements of record.   See Jan. 25, 2010

Opinion at 16-19 (providing explication of evidence); see also July 20, 2010 Memorandum

Opinion at 3, 7-8.   More specifically, rather than suggesting that Defendants were motivated to

purposefully undervalue Northern-State members of the Mississippi AECL class because they

would be entitled to a higher percentage of Southern-State clients' fees, the co-counsel agreement

indicated that "fee-sharing arrangements with regard to the Southern Clients entitled individual

Defendants to the same or lesser – rather than greater – percentage fee."   See July 20, 2010

Opinion at 8.[21]   In January, 2010, the Court suggested that Plaintiffs address "the factually

underpinnings of Defendant's cogent defense".   When Plaintiffs elected to omit any direction to

substantiating evidence of a conflict of interest as to fees in subsequent pleadings, the Court

suggested the claim would be more appropriately addressed on a Motion for Partial Summary

Judgment than by dismissal (as then requested by Defendants).   See id.

The facts in evidence are that:

   (1)   Defendant Taylor (a Texas lawyer) had a written co-counsel agreement with local

---

[21]   In previously explicating the problematic nature, under the plain language of the co-counsel contracts, of this theory of the case, the Court also noted that it was broached by Plaintiffs following the Third Circuit's indication that Plaintiffs' initial theory of liability- grounded on alleged "geographic discrimination" - was without jurisprudential support.   See Jan. 25, 2010 Opinion at 16-18.   See also July 20, 2010 Opinion at 7-8 ("Plaintiffs' initial theory of the case was that the Northern Clients were the victims of 'geographic discrimination' in Defendants' settlement allocations under the Mississippi AECL. . . .   [T]he Third Circuit recognized that regional/geographic differences affect personal injury recovery amounts and, accordingly, impact which individuals are truly 'similarly situated' for purposes of reasonable personal injury litigation settlement value."); Defendants' Memorandum of Law in Support of Joint Motion for Summary Judgment ("Defendants' Support of JMSJ") at 3-7.

counsel for Northern clients in the Mississippi AECL that entitled him to between 95-97.5% of an underlying 40% contingency fee.[22]

(2)   Defendants Taylor and Pritchard (a Mississippi lawyer) had a written Agreement on Fees with Walter Weathers (a Texas lawyer who is not a party to this action), pertaining to and applied with regard to Southern clients in the Mississippi AECL, that entitled Taylor to 50%, and Pritchard and Weathers to 25% each, of an underlying 40% contingency fee.   See Defendants' Joint Concise Statement of Undisputed Material Facts and Exhibits thereto.   See also Defendants' Joint Reply Brief in Further Support of MPSJ at 4-5 & n. 8 (citing testimony that Agreement pertained to Southern clients in the Mississippi AECL (e.g., clients from Mississippi and neighboring states such as Alabama and Louisiana), including both those with whom Pritchard had a direct client relationship and those referred to him by other lawyers in Southern states).

This Agreement includes language, in its fourth paragraph, encompassing "all referral or other fees collected from other attorneys on cases filed or to be filed in the State of Mississippi, to specifically include, but not be limited to, all fees paid by William Roberts Wilson, Alwyn Luckey, John Arthur Eaves, Maurice Campbell, Matt Dove, and Billy H. Davis, Jr. . . ."  See Defs. Ex. E in Support of Partial Summary Judgment Motion.   Defendants have introduced testimony that this language was intended and applied to additional Southern client cases, e.g., referrals from the

---

[22]  Defendant Pritchard was not a party to the co-counsel agreement with local counsel for Northern clients.   Deposition testimony indicates that he did not consider himself entitled to, made no claim for, and received no fees with regard to those clients. See, e.g., Defendants' Joint Reply Brief in Further Support of MPSJ at 4-5 (providing extensive citations to deposition to testimony).

named counsel, all of whom resided/practiced in Mississippi, Texas and/or other Southern states.

<u>See</u> Defendants' Joint Reply Brief in Further Support of MPSJ at 5, 7-8 & n. 12 (citing deposition

testimony of parties to Agreement).

(3)   The four (4%) percent fee received by Defendant Cox (a North Carolina lawyer) for

work in negotiating certain related settlements did not vary by class member's state of residence.

<u>See</u> January 25, 2010 Opinion at 17; Third Amended Complaint at Paragraph 17; Plaintiffs'

Memorandum of Law in Opposition at 18.

(4) Cox and Taylor were responsible for allocating the settlement funds among the

Mississippi AECL plaintiffs .   <u>See</u> Plaintiffs' Memorandum of Law In Opposition to Defendants'

MPSJ at 6 (citing Plaintiffs' Statement of Facts at paragraph 22 and Exhibits thereto); <u>id.</u> at 19.

In maintaining the viability of a "conflicting fee incentive" theory, Plaintiffs now assert

that the "other fees" language of the Agreement on Fees between Taylor, Pritchard and Weathers

applied to Northern as well as Southern clients (*e.g.*, that Taylor had a conflict of interest because

his 95-97% fee in the Northern clients' Mississippi AECL cases, like Taylor's fee in the Southern

clients' Mississippi AECL cases, was subject to a 50% fee share to Pritchard and Weathers).   <u>See,</u>

<u>*e.g.*</u>, Plaintiffs' Memorandum of Law In Opposition at 2.   Plaintiffs have adduced, however, no

evidence - despite nine (9) years of litigation and extensive and protracted discovery – supporting

this assertion.[23]   And, as documented in Defendants' pleadings, the further factual record from

---

[23]  They also produce no evidence in support of their assertion that Pritchard did not collect fees to
which he was purportedly entitled under the Agreement because he "knew it was wrong."   <u>See</u>
Plaintiffs' Opposition Memo at 14, 17.

discovery undertaken in this action is to the contrary.   <u>See</u> Defendants' Joint Reply Brief in Further Support at 4-11 (providing extensive citation and excerpts from deposition testimony of parties to Agreement on Fees regarding intent and consistent implementation of Agreement on Fees to Southern AECL cases).

Plaintiffs' assertions that this deposition testimony - in further support of the fee arrangements set forth in the written documents of record - constitutes "hearsay" or inadmissible "parole evidence" are misplaced for reasons competently canvassed in Defendants' Joint Reply Brief in Further Support of the PMSJ at 11-13.   <u>Compare</u> Plaintiffs' Memorandum of Law In Opposition at 2.   Moreover, the parties' performance, *i.e.*, their actual conduct, is what matters in this context, where the question raised by Plaintiffs is whether Defendant counsel allocating settlement funds had an expectation of retaining a greater portion of the underlying fee in Southern cases.   The understanding of the parties to the fee-sharing agreements and the parties' practice pursuant to those agreements is certainly material to determining that expectation.   A contested interpretation of the language that runs contrary to all evidence of the parties' understandings and course of performance is insufficient to raise a triable issue as to any purported conflicting interest.

**B.   Plaintiffs Have Failed to Adduce Evidence Sufficient to Maintain a Claim for Breach of Fiduciary Duty of Loyalty Under Texas Law Premised on Retaliatory or Ineffective Withdrawal of Representation**

As noted in Section II(D), *supra,* this Court has previously spoken to the termination of the

parties' attorney-client relationship.   See, e.g., Janury 25, 2010 Memorandum Opinion at 12

("Although it is not entirely clear from the pleadings whether the Plaintiffs regard themselves as

current or former dissatisfied clients of the Defendants, they certainly have effectively terminated

their attorney-client relationship, i.e., their relationship of trust is irretrievably broken"); Cf. Huber

II, 532 F.3d at 242 (observing that Plaintiffs "were previously represented by Defendants . . .").

Plaintiffs' Third Amended Complaint alleges that Taylor withdrew his representation of

the named Plaintiffs " in retaliation for filing this lawsuit" and that in "attempting to withdraw

from their representation", Defendant breached a fiduciary duty of loyalty and failed to comply

with the withdrawal requirements of the Texas Disciplinary Rules.   These claims remain

unsubstantiated and are appropriate for summary judgment.

More particularly, the evidence indicates that Named Plaintiffs' elected to retain new

counsel and to file this action, including a First Amended Complaint filed in March, 2002

containing counts for professional malpractice, breach of fiduciary duty, fraud, conversion,

conspiracy and deceptive trade practices.   In Fall, 2002, in accordance with Texas Rules of

Professional Conduct,[24] Plaintiffs were properly formally notified of Taylor's inability to

represent them given the conflict of interest created.   Counsel also extended appropriate

assurances of their protection of Plaintiffs' interests through, e.g., Plaintiffs' participation in

settlements made/substantially made at the time of the effective termination (i.e., Plaintiffs' filing

---

[24] See Texas Disciplinary Rules of Professional Conduct, Rules 1.06 (governing conflict of
interest); 1.15 (governing termination of representation and requiring reasonable steps to protect
the client's interest).

of their First Amended Complaint in March, 2002), and offers of assistance.   See Memorandum

of Law in Support of Defendants' Joint MPSJ at 12-117 citing to Exhibits of record, including

withdrawal letters, and quoting their provisions);[25] id. (citing CP Solutions PTE, Ltd. v. Gen. Elec.

Co., 550 F.Supp.2d 298, 302 (D. Conn. 2008) ("[I]t is hard to imagine a situation presenting a

greater conflict of interest than an attorney's being sued by his client for malpractice while still

serving as counsel of record in the underlying action . . . .   Clearly, under the circumstances . . .,

withdrawal of representation is not only warranted but required."); Defendants' Joint Reply in

Further Support of MPSJ at 13-14 (distinguishing cases cited by Plaintiffs regarding

counsel-initiated withdrawal or abandonment).   Plaintiffs' assertion that Taylor's withdrawal was

"ineffective" similarly fails in light of the evidence of record.   See generally Texas Disciplinary

Rules of Professional Conduct 1.15; Withdrawal by Lawyer 48 Tex. Prac., Tex. Lawyer & Jud.

Ethics Section1:22 (2009-10); Weiss v. Comm'n for Lawyer Discipline, 981 S.W.2d 8, 15-16

(Tex. App. 1998). [26]   Plaintiffs fail to adduce evidence substantiating that, following Plaintiffs'

filing suit against Defendant counsel, they lacked access to legal advice through their counsel in

this case, or that Taylor failed in any way to comply with applicable codes of professional conduct,

---

[25]   See also id. at 15 ("It is undisputed that Local Counsel, who had retainer contracts and a direct
attorney-client relationship with the named plaintiffs, notified each named plaintiff in writing that
Taylor and Local Counsel could not represent them in negotiations of their asbestos claims given
the conflict of interest or appearance of a conflict of interest created by their filing suit against
Taylor").   Local Counsel are not parties to this action.

[26]   As Defendants note, Rule 10 of Texas Rules of Civil Procedure, authorizing attorney
withdrawal from representation upon written motion for good cause, applies to cases filed in Texas
state courts.   See Memorandum of Law in Support of Joint MPSJ at 17 & n. 10.

failed to cooperate in the transfer of representation, or by his improper conduct prejudiced the Named Plaintiffs' interests.

The Court moreover observes that Named Plaintiffs' filing of a lawsuit clearly asserting that Defendants breached their duties toward Plaintiffs with every settlement amounted to a repudiation of authority to enter into such settlements on their behalf, if not a repudiation of the attorney-client relationship in its entirety.   Consequently, Named Plaintiffs cannot now be heard to complain of Defendants' discontinuance of representation in post-litigation settlements or of notice from Local Counsel and Taylor of withdrawal.


## IV.   **CONCLUSION**

Accordingly, upon review of the pleadings and briefs of record, as well as the evidence before the Court in this 2002 action, Plaintiff's Motion for Class Certification be denied and Defendants' Motion for Partial Summary Judgment be granted.   An appropriate Order will follow.

Lisa Pupo Lenihan
Chief United States Magistrate Judge

Date:   September 29, 2011