IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD L. HUBER; WILLIAM J. AIRGOOD; ANTHONY DeFABBO; JOHN DINIO; ERNEST GISHNOCK; JOHN BIDLENCSIK; HILMA MULLINS and WILLIAM DEEM, individually and on behalf of those similarly situated | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 002-304 |
| ROBERT G. TAYLOR, II; ROBERT G. TAYLOR, P.C.; R.G. TAYLOR II, P.C.; ESTATE OF ROBERT A. PRITCHARD; PRITCHARD LAW FIRM, PLLC; JOSEPH B. COX, JR.; JOSEPH B. COX, JR. LTD; and COX AND COX, LLP | ) ) ) ) ) ) ) | Chief Magistrate Judge Lisa Pupo Lenihan ECF No. 436 |
| Defendants. | ) | |

**OPINION ON PLAINTIFFS' MOTION TO AMEND THE JUDGMENT**

**I.  HISTORY AND SCOPE OF CLAIM**

As noted repeatedly in this Court's previous Opinions, the claims presently remaining in this 2002 action relate to Defendants' representation of the eight (8) above-named Plaintiffs (the "Named Plaintiffs") in consolidated individual personal injury actions for exposure to asbestos, in the State Court of Mississippi (the "Mississippi Asbestos Exposure Consolidated Litigation" or "Mississippi AECL").   More specifically, "Plaintiffs maintain, under the express law of the case

as set forth by the Court of Appeals, a claim for breach of fiduciary duty under Texas law, by

which they may be entitled, *despite having incurred no actual injury*, to disgorgement of all or

some portion of the attorney fees paid by the Named Plaintiffs . . . . And with evidence sufficient to

raise a question of intentional breach of fiduciary duty, Plaintiffs might also be entitled to punitive

damages under Texas law."   See September 29, 2011 Opinion on Motions for Class Certification

and Partial Summary Judgment (denying Plaintiffs' Motion for Class Certification and granting

Defendant's Motion for Partial Summary Judgment) (the "September Opinion").[1]   Plaintiffs'

claims turn on allegations that Defendants breached their Texas law fiduciary duty (by failing to

adequately disclose material information, including, *e.g.*, co-counsel arrangements and/or

settlement information, to Mississippi AECL participants residing in Pennsylvania, Ohio and

Indiana (the "Northern Clients"); allocating settlement funds disproportionately owing to

conflicting fee incentives; and/or failing a duty of candor/disclosure by imposing excessive

charges).

        The Court's September Opinion explained at length its bases for granting partial summary

judgment.   See September Opinion; see also Defendants' Joint Memorandum of Law in

Opposition to Plaintiffs' Motion to Amend ("Defendants' November Memorandum").

            Presently pending is Plaintiffs' October, 2011captioned "Motion to Amend the

Judgment", which is essentially a Motion for Certification for Interlocutory Appeal of this Court's

---

[1] The Third Circuit recently denied Plaintiffs' Petition for Leave to Appeal this Court's denial of
class certification.   See November 17, 2011 Order, Case No. 11-8084.

grant of Defendants' Motion for Partial Summary Judgment, asserted under 28 U.S.C. § 1292(b).[2]

Said Motion will, for reasons set forth below, be denied.


## II.   INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292(b), the Court may certify an Order for interlocutory appeal where it concludes that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."   The circumstances must meet each of these three (3) conditions.    And the party seeking certification has the burden of establishing that exceptional circumstances warrant departure from the general policy against piecemeal litigation and in favor of postponing appellate review until after the entry of final judgment.   See, e.g., Vaughn v. Flowserve Corp., 2006 WL 3231417 (D.N.J. Nov. 8, 2006); see also Harris v. Kellogg, Brown & Root Services, Inc., 2009 WL 1248060 (W.D. Pa. Apr. 30, 2009) ("Certification pursuant to section 1292(b) should be granted 'sparingly' and only when [all] three conditions are met.").


## III.   ISSUES AND ANALYSIS

Plaintiffs seek interlocutory appeal to the Third Circuit under 28 U.S.C. § 1292(b), on what they characterize as this Court's fundamental errors in the following "controlling questions of law": (A) whether the parole evidence rule applies to interpretation of a contract in the context of a

---

[2] Plaintiffs suggest that they should obtain immediate appellate review "as either reversal or affirmance would force [the parties] to consider seriously settlement."   Plaintiffs' Memorandum of Law in Support at 1.   If either party has not yet – in the nine (9) year course of this litigation deemed it time to "consider seriously" their position under the law – a subject on which much express guidance has been given by this Court and the Court of Appeals for the Third Circuit – it is strongly suggested that they undertake that assessment prior to further pleading.

breach of fiduciary claim; (B) whether Defendant Pritchard was Plaintiffs' attorney; and (C)

whether there is sufficient evidence for a reasonable jury to conclude that Defendant Taylor

satisfied his fiduciary duties to Plaintiffs in attempting to withdraw from representation."

Plaintiffs' Motion to Amend the Judgment at 2.[3]

### A.   Inapplicability of Parole Evidence Rule

The September Opinion granted partial summary judgment on Plaintiffs' claim that

Defendants breached a Texas law fiduciary duty because settlement funds were allocated on the

basis of conflicting fee incentives that disfavored Northern clients.   In doing so, it set forth the

factual evidence identified by the parties.[4]   It then addressed Plaintiffs' assertion that under the

---

[3]  See also id. (asserting that "the Order conflicts with Third Circuit precedent as to all three questions").

[4]  The facts in evidence are that:

(1)   Defendant Taylor (a Texas lawyer) had a written co-counsel agreement with local counsel for Northern clients in the Mississippi AECL that entitled him to between 95-97.5% of an underlying 40% contingency fee.

(2)   Defendants Taylor and Pritchard (a Mississippi lawyer) had a written Agreement on Fees with Walter Weathers (a Texas lawyer who is not a party to this action), pertaining to and applied with regard to Southern clients in the Mississippi AECL, that entitled Taylor to 50%, and Pritchard and Weathers to 25% each, of an underlying 40% contingency fee.   See Defendants' Joint Concise Statement of Undisputed Material Facts and Exhibits thereto.   See also Defendants' Joint Reply Brief in Further Support of MPSJ at 4-5 & n. 8 (citing testimony that Agreement pertained to Southern clients in the Mississippi AECL (e.g., clients from Mississippi and neighboring states such as Alabama and Louisiana), including both those with whom Pritchard had a direct client relationship and those referred to him by other lawyers in Southern states).

This Agreement includes language, in its fourth paragraph, encompassing "all referral or other fees collected from other attorneys on cases filed or to be filed in the State of Mississippi, to specifically include, but not be limited to, all fees paid by William Roberts Wilson, Alwyn Luckey, John Arthur Eaves, Maurice Campbell, Matt Dove, and Billy H. Davis, Jr. . . ." See Defs. Ex. E in Support of Partial Summary Judgment Motion.   Defendants have introduced testimony that this language was intended and applied to additional Southern client cases, e.g., referrals from the named counsel, all of whom resided/practiced in Mississippi, Texas and/or other Southern states.

Agreement on Fees, Taylor's 95-97% fee in the Northern clients' cases, like his fee in the Southern clients' cases, was subject to a 50% fee share to Pritchard and Weathers. *After observing that "the question raised by Plaintiffs is whether Defendant counsel allocating settlement funds had an expectation of retaining a greater portion of the underlying fee in Southern cases", the Opinion concluded that "the understanding of the parties to the fee-sharing agreements and the parties' practice pursuant to those agreements is certainly material to determining that expectation" and "a contested interpretation of the language that runs contrary to all evidence of the parties' understandings and course of performance is insufficient to raise a triable issue as to any purported conflicting interest."* September Opinion at 19 (emphasis added).

As noted in the September Opinion and canvassed in Defendants' Joint Reply Brief in Further Support at 11-13, the cases cited by Plaintiffs in their supportive Memoranda were and remain factually and legally inapposite. Plaintiffs' assertion, in their Memorandum of Law in Support of Motion to Amend at 2, that this Court "[held] that the parole evidence rule does not apply when interpreting an unambiguous contract unless the plaintiff asserts a breach of contract

---

See Defendants' Joint Reply Brief in Further Support of MPSJ at 5, 7-8 & n. 12 (citing deposition testimony of parties to Agreement).

(3)  The four (4%) percent fee received by Defendant Cox (a North Carolina lawyer) for work in negotiating certain related settlements did not vary by class member's state of residence.  See January 25, 2010 Opinion at 17; Third Amended Complaint at Paragraph 17; Plaintiffs' Memorandum of Law in Opposition at 18.

(4) Cox and Taylor were responsible for allocating the settlement funds among the Mississippi AECL plaintiffs .  See Plaintiffs' Memorandum of Law In Opposition to Defendants' MPSJ at 6 (citing Plaintiffs' Statement of Facts at paragraph 22 and Exhibits thereto); id. at 19.

September Opinion at 16-19.  (The Court further observes that there is no evidence of record that Taylor's fee on the Northern Clients was ever reduced by any amount under his Agreement on Fees with the Southern lawyers set forth in (2) above.)

claim"[5] is, in light of the actual language of the Opinion, simply incorrect.   To the contrary, the

Court rejected Plaintiffs' contention that the parole evidence rule could be invoked (a) by a third

party with neither contractual nor beneficiary relationship to the contract to (b) preclude the

contracting parties' evidence of mutually-agreed intent and course of conduct over several years

where (c) that third-party wished the Court to interpret the contract to have had some *other*

meaning and (d) said party had introduced, despite nine (9) years of litigation, not one iota of

evidence that the contract had been interpreted or implemented in a manner potentially giving rise

to the improper settlement allocations alleged.   See September Opinion.   As the September

Opinion indicates, interpretation of the Fee Agreement is simply not at issue.   Rather, the

allegation of conflicting incentives raised by Plaintiffs turns on the expectation of receipt of fees –

an issue as to which the Defendants' actual conduct is clearly more relevant than a theoretical

interpretation of contract language.   The Court, accordingly, looked to evidence of the contracting

parties' intent and practices. [6]   Compare In re Unisys Corp. Retiree Med. Benfit ERISA Litig., 57

F.3d 1255 (3d Cir. 1995) (interpretation of contract where breach of fiduciary duty claim turned on

employer's *failure to apply terms* of ERISA benefit plan).[7]

---

[5] Plaintiffs' Memorandum of Law in Support at 2 (also asserting that such holding was "directly contrary to Third Circuit precedent applying the parole evidence rule . . . in the context of a breach of fiduciary claim").

[6] Even assuming the parole evidence rule were applicable to evidence of the parties' intent at the time of drafting, Plaintiffs have not demonstrated that it would bar evidence of their course of performance.   Application *vel non* of the parole evidence rule does not significantly affect the outcome, since most evidence at issue would remain admissible.   Compare Plaintiffs' Memorandum of Law in Support at 7; cf. Defendants' November Memorandum at 14.

[7] Plaintiffs refer to Third Circuit ERISA case law and make no attempt to demonstrate the answer to this question under Texas law.   Compare Defendants' November Memorandum at 6, 11.   No further holding is necessary to the Court's Opinion and Order, but the Court observes that Plaintiffs make no showing contrary to Defendants' recitation of Texas decisions (and citations to hornbook law) indicating that the parole evidence rule may not be invoked by strangers to the

**B.** **Absence of Evidence of Discriminatory Settlement Allocations Owing to Conflict of Interest**

As reiterated above, the grant of partial summary judgment on Plaintiffs' "conflicting fee incentive" theory was premised on Plaintiffs' failure to make out evidence of discriminatory settlement allocations owing to/attributable to a conflict of interest.   The Court made no holding as to "whether Defendant Pritchard was Plaintiffs' attorney" nor was any such holding requisite to the Court's Opinion, for reasons self-evident therein.   See September Opinion at 17-19 and nn. 22-23. As Defendants observe, Plaintiffs appear to have made this question up out of whole cloth.

The Court further notes that:

(1) On its face, whether or not Pritchard was Plaintiffs' attorney is not a question of law. The existence of an attorney-client relationship is at best a mixed question of law and fact, and normally would be predominantly a factual question.

(2) Plaintiffs' status as clients of Pritchard would not be controlling, as grant of summary judgment on their claim for disgorgement for breach of fiduciary duty arising from disproportionate settlement allocations attributable to conflicting fee incentives, as against Pritchard, would remain appropriate in view of Pritchard's non-determination of settlement allocations and non-receipt of fees, rendering any disgorgement claim nugatory.

(3)   Rather than pointing to any evidence suggesting that Plaintiffs *were* Pritchard's clients, Plaintiffs' attempt to make much of the Third Circuit's general observations, in Huber I that there was "no question that defendant attorneys owed Plaintiffs fiduciary duty" as "all attorneys in a co-counsel relationship individually owe each . . . client the duty of loyalty".   See

---

contract.   Nor do Plaintiffs cite any authority in any jurisdiction that applies the parole evidence rule to circumstances that involve the parties' expectations rather than contractual interpretation.

Plaintiffs' Memorandum of Law in Support at 2 (quoting Huber v. Taylor, 469 F.3d 67, 82 (3d Cir. 2006).   But that statement, properly considered in context, clearly does not address the factual issues regarding Pritchard in particular, and the Circuit did not have before it, *e.g.*, the undisputed testimony that Pritchard never expected nor received any funds from Plaintiffs' cases.   The Circuit's generic statement cannot, therefore, be transmuted into a declaration of a rule of law.

In that the September Opinion premised its conclusions on the factual evidence before it, and on relevant precedent and holdings, Plaintiffs' mischaracterizations and/or misunderstandings of those facts and that case law do not alter this Court's analysis.     There remains, therefore, only Plaintiffs' third asserted error of law:

### C.   Adequacy of Notice of Withdrawal by Local and Affiliated Counsel Following Suit by Plaintiffs

Finally, as to this issue, the September Opinion concluded that Local Counsels' correspondence adequately and appropriately provided notice to their Plaintiff clients of their withdrawal, and that of affiliated counsel, from representation in the asbestos litigation.   As the Opinion observes, Plaintiffs had elected, through other counsel, to initiate litigation against Defendants alleging various misconduct (including professional malpractice, breach of fiduciary duty, fraud, and conversion) in such representation.   As Plaintiffs, and not Defendants, initiated termination of any attorney-client relationship, the cases cited in Plaintiffs' supporting memoranda are again largely inapposite. [8]   In addition, the existence of a triable question as to whether Taylor

---

[8] See September Opinion at 21-24 ("Plaintiffs fail to adduce evidence substantiating that, *following Plaintiffs' filing suit against Defendant counsel*, they lacked access to legal advice through their counsel in this case, or that Taylor failed in any way to comply with applicable codes of professional conduct, failed to cooperate in the transfer of representation, or by his improper

satisfied his notification duties clearly turns on an evidentiary analysis – indeed, Plaintiffs phrase it as such – and is, therefore, quintessentially *not* a question of law potentially appropriate for interlocutory appeal.

The Court reiterates that Plaintiffs must have been well aware that their decision to bring suit against Taylor made his continued representation of them untenable.   They were then given express, unambiguous, facially-intelligible notice of withdrawal by their local counsel - *i.e.*, by their principal contact counsel and direct-relationship counsel - on behalf of all co-counsel.[9] Plaintiffs' present protestation that they did not understand this communication (curiously couched as an "admission") is belied by the fact that they were represented by counsel who were intimately involved in questions concerning Plaintiffs' attorney-client relationship with Defendants.[10]   In any event, there is no authority suggesting that Taylor had an obligation to

---

conduct prejudiced the Named Plaintiffs' interests. The Court moreover observes that Named Plaintiffs' filing of a lawsuit clearly asserting that Defendants breached their duties toward Plaintiffs with every settlement amounted to a repudiation of authority to enter into such settlements on their behalf, if not a repudiation of the attorney-client relationship in its entirety."); Defendants' Joint Reply in Further Support at 13-14.   Cf. January 25, 2010 Memorandum Opinion at 12 (noting that Plaintiffs "certainly have effectively terminated their attorney-client relationship, *i.e.*, their relationship of trust is irretrievably broken"); CP Solutions PTE, Ltd. v. Gen. Elec. Co., 550 F.Supp.2d 298, 302 (D. Conn. 2008) ("[I]t is hard to imagine a situation presenting a greater conflict of interest than an attorney's being sued by his client for malpractice while still serving as counsel of record in the underlying action . . . .   Clearly, under the circumstances . . ., withdrawal of representation is not only warranted but required.").

[9] While counsel's duty of loyalty is non-delegable (*i.e.*, that counsel retains liability for any breach), it is an absurdity to suggest that tasks/generation of work product/communications associated with legal representation are *also* non-delegable, *i.e.*, that counsel must perform each associated task him/herself.   Compare Plaintiffs' Memorandum of Law in Support at 2 (asserting that Taylor's responsibility to communicate his withdrawal from representation" was non-delegable under the Third Circuit's holding as to the duty of loyalty).   Cf. Defendants' November Memorandum at 8 (discussing governing Texas law); id. at 17 (distinguishing delegation of duties of, *e.g.*, disclosure and communication).

[10] Plaintiffs have not indicated to the Court any delay in their provision of the withdrawal notices

convey any particular subjective understanding on the part of Plaintiffs.    The Court found that reasonable minds could not differ as to the legal sufficiency of Taylor's notice, and Plaintiffs' avowed failure to understand what was plainly conveyed does not alter that determination.

### D.   Improbability of Material Advancement of Ultimate Resolution

As Plaintiffs have not met the first two prongs of the three conditions precedent to cert9ifying an order for interlocutory appear, it will not go into depth on the third condition. The Court does observe, however,   that Plaintiffs' contention that resolution of any of the above asserted issues would materially advance the ultimate resolution of their action is speculative at best.    The questions to be tried in the remaining claims differ from those dismissed.   And in view of the contentious history of this litigation, it is reasonably likely that – absent newly "serious" consideration of their positions[11]  and a change in conduct – the disappointed party will seek appeal after trial even if these issues were reviewed.    Accordingly, Plaintiffs' request would give rise to precisely the sort of piecemeal appeal that the final judgment rule is designed to guard against.[12]

---

to their current counsel.

[11] See *supra* note 3.

[12] Plaintiffs' contend that, as their "claims are small and [they] are of little means, they "should not be forced to incur the expense of two trials". Plaintiffs' Memorandum of Law In Support at 3; id. 13 ("Plaintiffs are former steelworkers of modest means" and "[t]heir individual claims for disgorgement are . . . in many cases, less than $1000").   But neither the costs which Plaintiffs have incurred/will occur, nor their agreements with current counsel (nor, indeed, whether any portion of associated costs are being paid by others), is of record.   The Court therefore declines to give weight to a paupers' argument absent further record showing.   It is, of course, appropriate that any understandings regarding litigation expense or fee arrangements be of record as they become relevant to a federal law suit.

**IV.   <u>CONCLUSION</u>**

As Plaintiffs present no "controlling question of law" as to which there is "substantial ground for difference of opinion", it will be ordered that Plaintiffs' Motion to Amend the Judgment be denied.

_____
Lisa Pupo Lenihan
United States Chief Magistrate Judge


Date:   December 5, 2011